# NO. 12-08-00059-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *CITY OF EMORY,*<br>*APPELLANT/CROSS-APPELLEE* | § | *APPEAL FROM THE 354TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT OF* |
| *SCOTT LUSK AND LISA LUSK,*<br>*APPELLEES/CROSS-APPELLANTS* | § | *RAINS COUNTY, TEXAS* |

## *OPINION*

The City of Emory appeals a trial court judgment embodying a jury's $10,000.00 award to Scott and Lisa Lusk as damages for a sewer easement taken by the City through inverse condemnation. In six issues, the City contends the judgment should be reversed because the Lusks consented to the taking, waived their right to seek damages, and failed to present evidence sufficient to support the award of damages. Contending the City is not immune from suit, the Lusks appeal from a partial summary judgment granted in favor of the City on the Lusks' breach of contract claim. We affirm the trial court's partial summary judgment and suggest a remittitur of a portion of the damages awarded in the judgment incorporating the jury verdict.

## BACKGROUND

The Lusks own a two acre trailer park within the city limits of Emory. The City of Emory approached the Lusks about placing a sewer line on an east–west axis through their trailer park. The City determined that the east–west sewer line would best be placed under the only driveway that went through the Lusks' trailer park. The Lusks agreed for this driveway to be torn up in exchange for construction by the City of a similar driveway. The Lusks executed an "Easement For Sewer Purposes" to the City of Emory on March 8, 2005. As part of the terms of the easement, which was to be no more than twenty feet wide, nothing could sit on the ground above the sewer line without

express permission of the City.

Following execution of this easement by the Lusks, the city council considered plans for the sewer project, which was being partially financed by a $700,000.00 grant from the federal government. Lisa Lusk was a member of the city council while these plans were being formulated and approved. After the necessary procedural steps had been taken, construction commenced on the sewer project. When the City began laying a second sewer line on a north–south axis across part of the trailer park, Scott immediately told Clyde Smith, the senior administrator for the City of Emory, that this was not part of the agreement. Smith confirmed Scott's testimony during trial. Even after Scott's immediate objection to the north–south sewer line, the City completed laying the second easement on the north-south axis across the Lusks' property.

After the City completed its work in their trailer park, the Lusks filed suit against the City. They alleged a cause of action for inverse condemnation seeking a monetary award for the sewer line that had been placed on their property on a north–south axis and a cause of action for breach of contract because the City replaced the driveway on their property with one approximately half the width of the driveway the City had destroyed. The City filed a motion for summary judgment alleging entitlement to judgment as a matter of law on the inverse condemnation cause of action on the basis of consent, on the breach of contract cause of action on the ground of estoppel, and claiming governmental immunity for both causes of action. The trial court granted a partial summary judgment for the City without stating its reason, ordering that the Lusks take nothing on their cause of action for breach of contract. The inverse condemnation claim was tried before a jury, which awarded the Lusks $10,000.00 on that claim.

## BREACH OF CONTRACT

In the one cross issue filed by the Lusks, they contend that the City was not entitled to governmental immunity and therefore the trial court erred in granting the City's motion for summary judgment on the breach of contract claim. In its motion for summary judgment, the City asserted entitlement to judgment on the breach of contract claim on the bases of estoppel and governmental immunity. The trial court's partial summary judgment recites that the City is entitled to summary judgment as a matter of law as to the breach of contract cause of action and ordered that the Lusks

take nothing on their breach of contract claim. However, the judgment does not state the basis of the trial court's ruling.

## Standard of Review

We review the trial court's summary judgment de novo. ***Tittizer v. Union Gas Corp.***, 171 S.W.3d 857, 860 (Tex. 2005). To prevail on a traditional summary judgment motion, the movant must show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P 166a(c). A movant who conclusively negates at least one essential element of a cause of action or proves all essential elements of an affirmative defense is entitled to summary judgment on that claim. ***Randall's Food Mkts, Inc. v. Johnson***, 891 S.W.2d 640, 644 (Tex. 1995). When the order granting summary judgment does not specify the particular grounds the trial court sustained, on appeal, the summary judgment opponent must defeat each summary judgment ground argued by the movant. ***Carr v. Brasher***, 776 S.W.2d 567, 569 (Tex. 1989). Otherwise, an appellate court must uphold the summary judgment on any ground that is supported by the evidence and pleadings. ***Id.***

## Governmental Immunity

In Texas, governmental immunity has two components: immunity from liability, which bars enforcement of a judgment against a governmental entity, and immunity from suit, which bars suit against the entity altogether. ***Tooke v. City of Mexia***, 197 S.W.3d 325, 332 (Tex. 2006). Immunity from suit bars a suit against the State or its political subdivisions unless the legislature expressly gives its consent to the suit. *See **Fed. Sign v. Texas S. Univ.***, 951 S.W.2d 401, 405 (Tex. 1997); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 101.025 (Vernon 2005). The rationale for governmental immunity is to allow the State and its political subdivisions to manage their fiscal matters in an orderly appropriations process. *See* TEX. GOV'T CODE ANN. § 311.034 (Vernon Supp. 2008). The legislature has allowed governmental liability for property damage, personal injury, or death caused by the wrongful act or omission or the negligence of an employee acting in the course and scope of his employment, or personal injury or death caused by a condition or use of tangible or real property. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021 (Vernon 2005). Neither of those situations was alleged by the Lusks in this case.

Further, the legislature has established governmental functions for which a municipality

enjoys immunity unless immunity has been waived under the Texas Tort Claims Act. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(a) (Vernon 2005). Specifically named is the provision of water and sewer service. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(a)32. Therefore, due to the City's immunity, the Lusks are precluded from filing a suit for breach of contract related to the laying of the sewer lines that cross their trailer park. *See **City of San Antonio v. BSR Water Co.**,* 190 S.W.3d 747, 753 (Tex. App.–San Antonio 2005, no pet.). Furthermore, the City asserted two grounds for judgment and the trial court did not specify the ground sustained. The Lusks do not complain that the trial court erred in basing the partial summary judgment on the City's estoppel argument. The record supports the trial court's ruling on the City's motion for summary judgment on the Lusks' breach of contract claim. The Lusks' cross issue is overruled.

### INVERSE CONDEMNATION – AFFIRMATIVE DEFENSES

The City appeals from the jury verdict and trial court rulings concerning the inverse condemnation claim. In its first four issues, the City argues that the Lusks consented to the easement and waived their complaints.

### Standard of Review

A trial court may disregard a jury's findings and grant a motion for judgment notwithstanding the verdict if a directed verdict would have been proper. ***Fort Bend County Drainage Dist. v. Sbrusch***, 818 S.W.2d 392, 394 (Tex. 1991). A directed verdict for a defendant is proper if the evidence conclusively establishes the movant's right to judgment or is insufficient to raise a fact issue on a vital fact. ***Prudential Ins. Co. v. Fin. Review Servs., Inc.***, 29 S.W.3d 74, 77 (Tex. 2000). In reviewing trial court rulings on motions for directed verdict and for judgment notwithstanding the verdict, we follow the standard of review for assessing the legal sufficiency of the evidence. *See **City of Keller v. Wilson***, 168 S.W.3d 802, 823 (Tex. 2005).

When the party who had the burden of proof at trial attacks the legal sufficiency of an adverse finding, that party must show that the evidence establishes, as a matter of law, all vital facts in support of the issue. ***Dow Chem. Co. v. Francis***, 46 S.W.3d 237, 241 (Tex. 2001). In our review, we first examine the record for evidence supporting the adverse finding, crediting favorable evidence, if a reasonable jury could, and disregarding evidence to the contrary, unless a reasonable

4

jury could not. *See **Cent. Ready Mix Concrete Co. v. Islas***, 228 S.W.3d 649, 651 (Tex. 2007); ***Dow Chem. Co.***, 46 S.W.3d at 241. If there is no evidence to support the finding, we examine the entire record to determine if the contrary proposition is established as a matter of law. ***Dow Chem. Co.***, 46 S.W.3d at 241. We will sustain the issue only if the contrary proposition is conclusively established. *Id*. A matter is conclusively established only if reasonable people could not differ in their conclusions. ***City of Keller***, 168 S.W.3d at 816.

When reviewing a factual sufficiency challenge to an issue upon which that party had the burden of proof, the moving party must demonstrate that the adverse finding is against the great weight and preponderance of the evidence. ***Dow Chem. Co.***, 46 S.W.3d at 242. The court of appeals must consider and weigh all of the evidence, and can set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Id*. The reviewing court may not substitute its opinion for that of the jury, as it is the jury's role to judge the credibility of witnesses, to assign the weight afforded their testimony, and to resolve inconsistencies within or conflicts among the witnesses' testimony. ***Golden Eagle Archery, Inc. v. Jackson***, 116 S.W.3d 757, 761 (Tex. 2003).

## Consent

In its first issue, the City contends that the trial court erred in overruling its motions for directed verdict and for judgment notwithstanding the verdict because the evidence proved as a matter of law that the Lusks consented to the north–south sewer line. In its second issue, the City contends that the jury's answer to Question Number 1, that the Lusks did not consent to an easement for the installation of the second sewer line, is against the great weight and preponderance of the evidence and is manifestly unjust.

Article I, section 17 of the Texas Constitution provides that "[n]o person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person." TEX. CONST. art I, § 17. An inverse condemnation proceeding is the proper avenue to seek redress when property has been taken or damaged for public use without compensation or a proper condemnation proceeding. ***City of Houston v. Texan Land & Cattle, Co.***, 138 S.W.3d 382, 287 (Tex. App.–Houston [14th Dist.] 2004, no pet.). The proceeding is denominated "inverse" because the property owner brings the suit. *Id.* Takings are

classified as either physical or regulatory. ***City of Sherman v. Wayne***, 266 S.W.3d 34, 43 (Tex. App.–Dallas 2008, no pet.). A physical taking occurs when the government authorizes an unwarranted physical occupation of an individual's property. ***Id.*** Physical possession is a categorical taking for which compensation is required. ***Id.***

Consent is an agreement, approval, or permission as to some act or purpose, given voluntarily by a competent person. BLACK'S LAW DICTIONARY 300 (7th ed. 1999). Consent is an affirmative defense to a landowner's takings claim. *See **Patel v. City of Everman***, 179 S.W.3d 1, 8 (Tex. App.–Tyler 2004, pet. denied). Consent can be manifested by acts and conduct. *See **Vandeventer v. All Am. Life & Cas. Co.***, 101 S.W.3d 707, 712-13 (Tex. App.–Fort Worth 2003, no pet.).

The March 8, 2005 easement calls for a single strip of land to be used for the sewer easement. The testimony of Scott Lusk, which was unobjected to by the City, showed that the easement he agreed to ran down the Lusks' driveway through their trailer park on an east–west axis. Nothing in the easement contemplated construction of a second sewer line running on a north–south axis across the Lusks' property. The placement of the north-south sewer line was therefore an additional taking not covered by the March 8, 2005 easement. Further, Scott Lusk immediately told Clyde Smith, senior administrator of the City of Emory, that the second sewer line being laid on the north–south axis was not part of the written easement. Smith did not attempt to contradict this testimony.

The City contends that Lisa Lusk consented to the laying of the second sewer line while she was a member of the city council in Emory. Even had her actions as a councilwoman constituted consent, this would not have been enough because the record before us shows that the trailer park was community property held jointly by Scott and Lisa Lusk. Community property held in the names of both spouses is considered joint management community property. *See* TEX. FAM. CODE ANN. § 3.102(c) (Vernon 2006). Lisa, acting alone, could not encumber the Lusks' trailer park. *See **In re Marriage of Morrison***, 913 S.W.2d 689, 692 (Tex. App.–Texarkana 1995, writ denied); *see also **Vallone v. Miller***, 663 S.W.2d 97, 99 (Tex. App.–Houston [14th Dist.] 1983, writ ref'd n.r.e.). In other words, both of the Lusks would have had to consent in order to encumber their property. *See **Jean v. Tyson–Jean***, 118 S.W.3d 1, 5 (Tex. App.–Houston [14th Dist.] 2003, pet. denied).

The evidence did not prove as a matter of law that the Lusks consented to the north-south sewer line. *See **Dow Chem. Co.***, 46 S.W.3d at 241. Therefore, the trial court did not err in denying

6

the City's motion for directed verdict or its motion for judgment notwithstanding the verdict. *See id*. Further, the jury's answer to Question Number 1, that the Lusks did not consent to an easement for the installment of the second sewer line, is not against the great weight and preponderance of the evidence. *See id*. at 242. The City's issues one and two are overruled.

**Waiver**

In its third issue, the City contends that the trial court erred in overruling its motions for directed verdict and for judgment notwithstanding the verdict because the evidence proved as a matter of law that the Lusks, by the terms of the easement, waived their right to seek damages. In its fourth issue, the City contends that the evidence is both legally and factually insufficient to support the jury's answer to Question Number 2, that the Lusks did not waive their right to seek damages. It argues that the Lusks agreed that adequate consideration was paid for the easement.

Waiver is an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right. *Sun Exploration & Prod. Co. v. Benton*, 728 S.W.2d 35, 37 (Tex. 1987). Ordinarily, the existence of waiver is a question of fact, based upon what is said and done. *Guzman v. Ugly Duckling Car Sales of Tex., L.L.P.*, 63 S.W.3d 522, 528 (Tex. App.–San Antonio 2001, pet. denied). Waiver is largely a matter of intent, and for implied waiver to be found through a party's actions, intent must be clearly demonstrated by the surrounding facts and circumstances. *Recognition Commc'ns, Inc. v. Am. Auto. Ass'n, Inc.*, 154 S.W.3d 878, 885 (Tex. App.–Dallas 2005, pet. denied) (op. on reh'g).

Here, the easement signed by the Lusks specifically called for one sewer line. The evidence introduced at trial conclusively showed that not only was there a sewer line running across the Lusks' property on a east–west axis but also a separate one running on a north–south axis. Further, the evidence showed that when the City began laying the pipeline on the north–south axis, Scott Lusk immediately contacted Smith to register his strong objection.

The City contends that the clause in the easement that said "[t]he consideration recited herein shall constitute payment in full for all damages sustained" acted as a waiver by the Lusks to seek any damages for the second sewer line. In essence, the City is contending that the Lusks gave them a blank check to do whatever it wished to on their property. This contention is rebutted by the language of the easement itself when it states "the Construction easement being a strip of land across

the tract referred to above, fifty (50 feet) in width." This language is unambiguous that only one strip of land for a sewer easement was contemplated by the parties when the easement was executed. Thus, the "consideration recited herein" could not apply to the north-south line. Waiver was not proven as a matter of law, and the trial court did not err in denying the City's motion for directed verdict or its motion for judgment notwithstanding the verdict. *See Dow Chem. Co.*, 46 S.W.3d at 241. Furthermore, the evidence is both legally and factually sufficient to support the jury's answer on the waiver issue. *See id*. at 241-42. Issues three and four are overruled.

## INVERSE CONDEMNATION – DAMAGES

In issue five, the City contends that its motions for directed verdict and for judgment notwithstanding the verdict should have been granted because there was no evidence of damages sustained by the Lusks. In its sixth issue, it contends that the evidence was not legally and factually sufficient to support the jury's award of $10,000.00 in damages.

**Standard of Review**

A challenge to a damages award is reviewed as any other challenge based on legal and factual sufficiency of the evidence. *See State v. McCarley*, 247 S.W.3d 323, 324 (Tex. App. -- Austin 2007, pet. denied). When the appellant is challenging the legal sufficiency of the evidence to support a finding on which it did not have the burden of proof at trial, the appellant must demonstrate on appeal that no evidence exists to support the adverse finding. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983). We may sustain a no evidence challenge only when 1) the record discloses a complete absence of evidence of a vital fact; 2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; 3) the evidence offered to prove a vital fact is no more than a mere scintilla; or 4) the evidence establishes conclusively the opposite of a vital fact. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998). We must view the evidence in the light favorable to the verdict, crediting favorable evidence if a reasonable factfinder could and disregarding evidence contrary to the finding unless a reasonable factfinder could not. *City of Keller*, 168 S.W.3d at 807. We must determine whether the evidence at trial would enable reasonable and fair minded people to find the facts at issue. *See id*. at 827.

If a party is attacking the factual sufficiency of the evidence to support a finding on an issue for which the other party had the burden of proof, the attacking party must demonstrate that there

8

is insufficient evidence to support the adverse finding. ***Westech Eng'g, Inc. v. Clearwater Constructors, Inc.***, 835 S.W.2d 190, 196 (Tex. App. -- Austin 1992, no writ). In reviewing this issue, we consider, weigh, and examine all the evidence presented at trial. ***Cain v. Bain***, 709 S.W.2d 175, 176 (Tex. 1986). We set aside a finding for factual insufficiency only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. ***Id***.

**Measure of Damages**

Compensation for land taken by eminent domain is measured by the fair market value of the land at the time of the taking. ***Exxon Pipeline Co. v. Zwahr***, 88 S.W.3d 623, 627 (Tex. 2002). Market value is the price the property will bring when offered for sale by one who desires to sell, but is not obliged to sell, and is bought by one who desires to buy, but is under no necessity of buying. ***City of Harlingen v. Estate of Sharboneau***, 48 S.W.3d 177, 182 (Tex. 2001). The owner of the property can testify to its market value, even if he could not qualify to testify about the value of the property belonging to someone else. ***Porras v. Craig***, 675 S.W.2d 503, 504 (Tex. 1984); *see also* ***Redman Homes, Inc. v. Ivy***, 920 S.W.2d 664, 669 (Tex. 1996). The three traditional approaches to determining market value are the comparable sales method, the cost method, and the income method. ***Estate of Sharboneau***, 48 S.W.3d at 182.

In arriving at the fair market value of property made the subject of condemnation proceedings, the preferred approach is to utilize comparable sales. ***Id***. However, the income approach to value is appropriate when property would, in the open market, be priced according to the income that it already generates. ***Id***. at 183. By estimating this future income and applying a capitalization rate, the income approach allows the appraiser to arrive at a present value for the income producing property. ***Id***.

When, as here, a condemnor takes only a portion of a landowner's property, the landowner is entitled to compensation in the amount of the market value of the part taken plus the damage to the remainder caused by the condemnation. ***Zwahr***, 88 S.W.3d at 627; ***Westgate, Ltd. v. State***, 843 S.W.2d 448, 456 (Tex. 1992). Compensation for a taking's damage to a remainder tract is measured by valuing the land immediately before and immediately after the taking. ***Zwahr***, 88 S.W.3d at 627. In valuing the loss in value of remainder property in a condemnation case, the factfinder is not entitled to depart from the range of value admitted as evidence. ***State v. Harrell Ranch, Ltd***., 268

S.W.3d 247, 258 (Tex. App. -- Austin 2008, no pet.). If a court of appeals holds that there is no evidence to support a damages verdict, it should render a take nothing judgment as to that amount. *Larson v. Cactus Util. Co.*, 730 S.W.2d 640, 641 (Tex. 1987). If part of a damage verdict lacks sufficient evidentiary support, the proper course is to suggest a remittitur of that part of the verdict. The party prevailing in the trial court should be given the option of accepting the remittitur or having the cause remanded. *Id*.

The starting point of our analysis is the charge submitted to the jury. *McCarley*, 247 S.W.3d 31 at 324-25. Here, the pertinent question submitted to the jury inquired as follows:

> What damages, if any, occurred to Plaintiffs' property as a result of the sewer line easement along a 20 foot x 110 foot strip of land south of the road through Plaintiffs' trailer park?
>
> In considering the amount of compensation, if any, to be awarded to Plaintiffs, you are to consider the fair market value of the portion of the real property constituting the 20 foot x 110 foot strip of land south of the road through Plaintiffs' trailer park along which the sewer line was installed and the diminished fair market value, if any, to the remainder of Plaintiffs' trailer park.

The jury was thus correctly instructed to calculate the Lusks' damages by considering the fair market value of the strip of land where the sewer line was installed and the diminished value of the remainder of the trailer park. *See Westgate, Ltd*., 843 S.W.2d at 456.

**Landowner's Valuation Testimony**

The Lusks paid $30,000.00 for the trailer park in 2001. Scott Lusk determined the amount of damages to his property based on the income method of valuation. He testified that the property had been rented solely for single-wide mobile homes throughout the time they had owned the trailer park. However, three of the fourteen lots in the mobile home park could accommodate a double-wide. Scott further testified that because the second sewer line, running north to south, had been placed upon one of these three lots, they are able to park only a single-wide mobile home on that lot.

Scott testified that he and Lisa could receive $250.00 per month for a double-wide mobile home on this lot. They had been receiving $160.00 per month for a single-wide mobile home on this lot. He also testified that at the time of the taking, as well as at the time of trial, this particular lot had been used only for a single-wide mobile home. He testified that he and Lisa had never leased any of the lots in the mobile home park for a double-wide. However, he also testified that they had

10

purchased a double-wide mobile home, but were waiting to move it into the park. Scott explained that, because of the second sewer line, they would lose $90.00 per month, the difference between the $250.00 that a double-wide could be leased for compared to the $160.00 for a single-wide. Scott determined that, over a ten year period, they would lose $10,800.00, but they asked for $10,000.00 for compensation from the City for this taking.

The City contends that this is no evidence of market value. It is well settled that the naked and unsupported opinion or conclusion of a witness does not constitute evidence of probative force and will not support a jury's finding even when admitted without objection. *Dallas Ry. & Terminal Co. v. Gossett*, 156 Tex. 252, 256, 294 S.W.2d 377, 380 (1956). When economic testimony is introduced into a trial, it must be based on objective facts, figures, or data. *See Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex. 1992). Further, the income approach to value is based on income that the business already generates. *See Estate of Sharboneau*, 48 S.W.3d at 183.

Here, the Lusks had never rented a double-wide mobile home in their trailer park during the five years in which they had owned it. Scott's testimony using the income approach was purely speculative in assuming that they could lease the lot for a double-wide every month for the next ten years. Furthermore, he did not take expenses into account. Scott testified that it would cost $5,000.00 to move a double-wide mobile home into their trailer park. This $5,000.00 should be included in the capitalization calculations but was not part of Scott's calculations. *See Sharboneau*, 48 S.W.3d at 183. Therefore, Scott's testimony as to the value of his property based on the income approach amounted to nothing but speculation and conjecture. *See Lefton v. Griffith*, 136 S.W.3d 271, 277 (Tex. App.–San Antonio 2004, no pet.). When it is apparent that the testimony is conclusionary, it is deemed nonprobative. *Houston Cab Co. v. Fields*, 249 S.W.3d 741, 749 (Tex. App.–Beaumont 2008, no pet.). A conclusory and nonprobative opinion is legally insufficient to support a jury verdict. *Id.* Moreover, the Lusks presented no probative evidence of the fair market value of the strip of land taken and no evidence of the diminution in value to the remainder of their property.

**The City's Valuation Testimony**

The City introduced evidence of the value of the real property through Don Spencer, a local real estate broker. Spencer testified that he determined the twenty foot by one hundred ten foot

sewage pipeline easement on the north-south axis has a value of $990.00. He testified that he arrived at this value by determining the square footage of the easement and then applying comparable sales figures in the City of Emory and Rains County to the property condemned. However, he did not consider or testify as to any diminution in the value of the remainder of the Lusks' trailer park.

Although the Lusks attempted to prove damages based on the income approach, they presented no probative evidence of valuation. However, the record includes some evidence of damages, that is, the market value of the part taken, $990.00. But the evidence does not include a showing of the diminution in value of the remainder of the land, if any, caused by the taking. *See Westgate*, *Inc*., 843 S.W.2d at 456. The $990.00 valuation cannot support the $10,000.00 jury verdict. Accordingly, the City's no evidence challenge fails, and we overrule its fifth issue and that portion of issue six complaining of no evidence. We sustain the remainder of issue six.

### CONCLUSION

We *affirm* the trial court's partial summary judgment on the Lusks' breach of contract claim.

The evidence is factually insufficient to support the $10,000.00 damage award on the inverse condemnation claim. The Lusks must be given the option of accepting a remittitur or having the cause remanded for a new trial. *See Larson*, 730 S.W.2d at 641. Accordingly, we suggest a remittitur of $9,010.00, the difference between the $10,000.00 awarded in the judgment and the $990.00 supported by the evidence. The Lusks are given fifteen days to choose whether to remit that amount. *See* TEX. R. APP. P. 46.3, 46.5. If the Lusks file a remittitur of $9,010.00 in this court within fifteen days of the date of this opinion, the judgment of the trial court as to the inverse condemnation claim will be reformed and affirmed with $990.00 in damages. If a remittitur is not filed, the trial court's judgment on the Lusks' inverse condemnation claim will be reversed and the cause will be remanded to the district court for a new trial. *See Larson*, 730 S.W.2d at 641; TEX. R. APP. P. 46.3.

*Affirmed* in part and conditionally *affirmed* in part.

      **JAMES T. WORTHEN**
      Chief Justice

Opinion delivered January 30, 2009.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)