IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-10-00136-CV

 

Trend Gathering & Treating, LP,

                                                                                    Appellant

 v.

 

Laura W. Moore, in her capacity as 

Trustee of the Laura W. Moore Living 

Trust, and Moore Pipeline Corridor, LLC,

                                                                                    Appellees

 

 



From the 82nd District Court

Robertson County, Texas

Trial Court No. 08-06-18,153-CV

 



MEMORANDUM  Opinion










 

            This is a land condemnation case. 
Trend Gathering and Treating, LP condemned a 50-foot permanent pipeline
easement and a 20-foot temporary workspace easement across property owned by
Laura Moore, in her capacity as trustee of the Laura W. Moore Living Trust. 
The jury assessed the value of the easement taken at $25, 528 and the damage to
the remainder at $222,642.  The trial court entered judgment based upon the
jury’s verdict.  We affirm in part and, conditioned on remittitur, modify in
part.

 

Background Facts

            Trend
filed a condemnation petition seeking to condemn Moore’s land for the permanent
easement and temporary easement.  The trial court appointed special commissioners
to assess Moore’s damages.  The special commissioners awarded Moore $958,057.50
for the value of the easement and damage to the remainder.  Trend deposited the
amount of the condemnation award into the court’s registry and received a writ
of possession.  Trend objected to the special commissioners’ award, and a trial
was held to determine the value of the property taken.  

Exclusion of Expert Testimony

            In
the first issue on appeal, Trend argues that the trial court should have
excluded the testimony of Moore’s expert, Karl Hoppess.  Whether to admit or
exclude evidence is a matter committed to the trial court's sound discretion.  Interstate
Northborough Partnership v. State, 66 S.W.3d 213, 220 (Tex. 2001).  The
trial court's decision to admit or exclude expert testimony is reviewed for
abuse of discretion.  Gammill v. Jack Williams Chevrolet, Inc., 972
S.W.2d 713, 718 (Tex. 1998).  An expert witness may testify regarding
scientific, technical, or other specialized matters if the expert is qualified,
the expert's opinion is relevant, the opinion is reliable, and the opinion is
based on a reliable foundation.  See Tex.
R. Evid. 702; Whirlpool Corp. v. Camacho, 298 S.W.3d 631, 637
(Tex. 2009).  

Qualification

            Trend
first argues that Hoppess in not qualified as an expert.  Trend filed a motion
to exclude Hoppess’s testimony, and the trial court held a hearing on the
motion.  Hoppess is an attorney who has represented both landowners and
condemning authorities.  Hoppess testified that he has rendered opinions on the
value of real estate since 1978.  However, Hoppess is not a licensed, certified
appraiser.  Because he is not a licensed or certified appraiser, Hoppess cannot
refer to an appraisal prepared by him as “certified” or “licensed.”  Tex. Occ. Code Ann. § 1103.201 (Vernon
2004).

Trend argues that because Hoppess is not a licensed, certified
appraiser, he cannot testify as an expert.  The Texas Appraiser Licensing and
Certification Board may adopt rules for certifying or licensing an appraiser
and rules relating to the education and experience required for certifying or
licensing an appraiser.  Tex. Occ. Code
Ann. § 1103.151 (Vernon Supp. 2010).  The TALCB adopted an advisory
opinion on October 20, 2006 concerning the requirement of a license or
certification.  The TALCB found that “an individual who wishes to render a
value opinion for real property or provide an opinion about the quality of
another real estate appraiser’s work must obtain a license, certification,
authorization, or registration from TALCB to engage in such real estate
appraisal activities in Texas.”  

The TALCB opinion specifically addressed whether a real estate
appraiser from another state who is not certified or licensed in Texas may
testify as an expert witness in a Texas legal proceeding for the purpose of
giving an estimate for the value of real property located in Texas or to rebut
an appraisal for real property in Texas that was prepared by an appraiser
licensed or certified by the TALCB.  The TALCB found that providing an expert opinion
concerning the market value of real property located in Texas is an appraisal
activity requiring a license or certification from TALCB.

            Moore
argues that Rule 702 of the Texas Rules of Evidence does not require a license
or certification to testify as an expert in a condemnation case.  In State
v. Northborough Center, Inc., the court found that Rule 702 does not
require a witness to have a license in order to testify as an expert.  State
v. Northborough Center, Inc., 987 S.W.2d 187, 194 (Tex. App.—Houston [14th
Dist.] 1999), pet. den’d).

            Although
we harbor some doubt about Hoppess’s qualifications to give an opinion on the
value of real property for testimony in a condemnation proceeding, we will
assume without deciding that Hoppess was qualified to testify as an expert
about the value of the easement.  We next consider whether his testimony was
relevant and reliable.  

Relevance
and Reliability

            An
expert's opinion, to be admissible, must be relevant and reliable.  State v.
Central Expressway Sign Associates, 302 S.W.3d 866, 870 (Tex. 2009); Exxon
Pipeline Co. v. Zwahr, 88 S.W.3d 623, 628 (Tex. 2002).  To be relevant, the
expert's opinion must be based on the facts; to be reliable, the opinion must
be based on sound reasoning and methodology.  State v. Central Expressway
Sign Associates, 302 S.W.3d at 870. 

Opinion testimony that is conclusory or speculative is not relevant
evidence, because it does not tend to make the existence of a material fact
more probable or less probable.  See Tex.
R. Evid. 401; City of San Antonio v. Pollock, 284 S.W.3d 809, 815
(Tex. 2009).  Expert testimony is unreliable if it is no more than subjective
belief or unsupported speculation.  TXI Transp. Co. v. Hughes, 306
S.W.3d 230, 239 (Tex. 2010); Exxon Pipeline Co. v. Zwahr, 88 S.W.3d at
629. 

Trend challenges the admissibility of Hoppess’s opinion on a number
of grounds.  We will focus on only one.  Trend argues that Hoppess’s opinions
are based upon improper valuation methodology and that there are analytical
gaps in Hoppess’s analysis.  Hoppess has not previously testified before a jury
in a condemnation case about the value of land.  He was designated as an expert
in another case involving the value of an easement, and the trial court in that
case excluded the testimony.  Hoppess has only testified on fair market value
of property that he owns.  

Hoppess testified at trial that in order to determine the fair market
value of the property, he first had to determine the highest and best use of
the property.  The highest and best use is defined as the reasonably probable
and legal use of vacant land or an improved property, which is physically
possible, appropriately supported, financially feasible, and that results in
the highest value.  City of Sugar Land v. Home and Hearth Sugarland, L.P.,
215 S.W.3d 503, 511 (Tex. App.—Eastland 2007, pet. den’d).  The existing use of
the land is its presumed highest and best use, but the landowner can rebut this
presumption by showing a reasonable probability that when the taking occurred,
the property was adaptable and needed or would likely be needed in the future
for another use.  Exxon Pipeline Co. v. Zwahr, 88 S.W.3d at 628.(Check
page)

The property is currently used as irrigated cropland, and the land
surrounding the property is also used as irrigated cropland.  At the hearing to
exclude his testimony, Hoppess testified that he determined the highest and
best use of the property to be for “investment purposes, either for development
as rural recreational subdivision and/or industrial.”  Hoppess states in his
report that the highest and best use is investment for future development as
recreational subdivision or industrial without providing any analysis on how he
arrived at his conclusion.  

At trial, Hoppess testified that in his opinion agricultural use has
not been the highest and best use of land for many years because it will not
support the price of land.  Again, Hoppess merely states his conclusion without
providing any analysis.  

Hoppess stated at trial that he looked at sixty-seven sales to
determine highest and best use, but he does not provide any analysis to show
that those sales support his conclusion on highest and best use.  Hoppess said
that he believes that the property lends itself in the reasonable future to be
utilized as a rural recreational subdivision such as small horse farms. 
Hoppess did not provide any evidence to show a trend in the development of
rural recreational subdivisions.  Hoppess acknowledged that there are no
adjacent tracts used for rural recreational subdivisions.  Hoppess did not show
that it was reasonably probable that the land would be used for industrial
purposes or as a recreational subdivision.  Consideration cannot be given to
uses which are purely speculative.  City of Sugar Land v. Home and Hearth
Sugarland, L.P., 215 S.W.3d at 511.  Hoppess’s testimony does not rebut the
presumption that the current use of irrigated cropland is the highest and best
use.  Hoppess’s opinion on highest and best use is conclusory and unsupported,
and therefore, unreliable.  

            Hoppess
testified that the highest and best use is key in establishing the fair market
value.  Hoppess also considered the highest and best use in his analysis of
damages to the remainder.  Hoppess found the damages to the remainder to be
$470,812.  In assessing the damage to the remainder, Hoppess found that to
utilize the property at its highest and best use, Moore would have to construct
special crossings over the easement.  Hoppess contends that the crossings are
required by Chapter 756 of the Texas Health and Safety Code.  

            By
way of comparison, Trend’s expert, Ronnie Harris, testified that he found no
evidence that the highest and best use of the land was anything other than the
current use of irrigated cropland.  Harris testified that there is no damage to
the remainder if the easement does not interfere with the highest and best
use.  Harris stated that the property is still in use as cropland.  Harris had
recently viewed the property, and he could not tell that the pipeline was
present.  Harris concluded that there was no damage to the remainder.  

            Having
found that Hoppess’s testimony was unreliable because it was speculative and
conclusory, we hold that the trial court erred in admitting the testimony.  We
sustain Trend’s first issue on appeal.  Because of our disposition of the first
issue on appeal, we need not address the remaining issues.  Tex. R. App. P. 47.1. 

Because Hoppess’s testimony should not have been admitted, the
evidence does not support the verdict for damages.  When there is no evidence
to support a damages verdict, the court of appeals should render a take nothing
judgment as to that amount.   Larson v. Cactus Util. Co., 730 S.W.2d
640, 641 (Tex. 1987); City of Emory v. Lusk, 278 S.W.3d 77, 88 (Tex. App.—Tyler
2009, no pet.).  If part of a damage verdict lacks sufficient evidentiary
support, the proper course is to suggest a remittitur of that part of the
verdict.  City of Emory v. Lusk, 278 S.W.3d at 88.  The party prevailing
in the trial court should be given the option of accepting the remittitur or
having the cause remanded.  Id.

            The
jury awarded $25,528 as the value of the easement and $222,642 as the damages
to the remainder.  The total amount of damages awarded is $248,170.  There is
evidence to support an award of damages to Moore for $21,180 as the value of
the easement.  There is no evidence to support the award for damages to the
remainder.  Subtracting $21,180 from $248,170 leaves a difference of $226,990. 
Accordingly, we suggest a remittitur in the amount of $226,990.  Tex. R. App. P. 46.3.

Cross-Point

            Moore
brings one cross-point in which she argues that the trial court erred by
ordering Laura W. Moore, in her capacity as trustee for the estate of Laura W.
Moore Living Trust, to remit part of the special commissioners’ award to Trend
because the award was only paid to Moore Pipeline Corridor, LLC.  Moore asks
that we modify the judgment to reflect that only Moore Pipeline is ordered to
remit the difference in the special commissioners’ award and the jury verdict. 
A party who seeks to alter the trial court’s judgment must file a notice of
appeal.  Tex. R. App. P. 25.1(c).
 Moore did not file a notice of appeal, and therefore, we cannot consider her
cross-point.

Conclusion

            We
affirm the trial court’s judgment awarding Trend a permanent easement and a
temporary workspace easement.  We affirm the trial court’s judgment ordering
Laura W. Moore, in her capacity as Trustee of the Laura W. Moore Living Trust,
and Moore Pipeline Corridor, LLC to remit to Trend the sum of $709,877.50.  If
Moore files a remittitur of an additional $226,990 within 12 days, we will
reform the judgment and, as reformed, affirm.  If the remittitur is not filed
within 12 days from the date of this opinion, we will reverse the trial court’s
judgment and remand for a new trial.  Our judgment in accordance with this
opinion and Moore’s subsequent action on the remittitur will be rendered 14
days from the date of this opinion.

 

                                                                        TOM
GRAY

                                                                        Chief
Justice

 

Before Chief Justice Gray,

            Justice Reyna, and

            Justice Davis

            (Justice Davis concurs with a note) *

Affirmed in part and modified in part

Opinion delivered and filed December 1, 2010

[CV06] 

 

            * (Justice
Davis concurs only partially as he would reverse and remand completely for a
new trial.  No separate opinion will issue.)