

# IN THE
# TENTH COURT OF APPEALS

### No. 10-10-00136-CV

**TREND GATHERING & TREATING, LP,**

                                    **Appellant**

 **v.**

**LAURA W. MOORE, IN HER CAPACITY AS
TRUSTEE OF THE LAURA W. MOORE LIVING
TRUST, AND MOORE PIPELINE CORRIDOR, LLC,**

                                    **Appellees**

---

### From the 82nd District Court
### Robertson County, Texas
### Trial Court No. 08-06-18,153-CV

---

## MEMORANDUM  OPINION

---

This is a land condemnation case.  Trend Gathering and Treating, LP condemned a 50-foot permanent pipeline easement and a 20-foot temporary workspace easement across property owned by Laura Moore, in her capacity as trustee of the Laura W. Moore Living Trust.  The jury assessed the value of the easement taken at $25, 528 and the damage to the remainder at $222,642.  The trial court entered judgment based upon the jury's verdict.  We affirm in part and, conditioned on remittitur, modify in part.

## BACKGROUND FACTS

Trend filed a condemnation petition seeking to condemn Moore's land for the permanent easement and temporary easement. The trial court appointed special commissioners to assess Moore's damages. The special commissioners awarded Moore $958,057.50 for the value of the easement and damage to the remainder. Trend deposited the amount of the condemnation award into the court's registry and received a writ of possession. Trend objected to the special commissioners' award, and a trial was held to determine the value of the property taken.

## EXCLUSION OF EXPERT TESTIMONY

In the first issue on appeal, Trend argues that the trial court should have excluded the testimony of Moore's expert, Karl Hoppess. Whether to admit or exclude evidence is a matter committed to the trial court's sound discretion. *Interstate Northborough Partnership v. State*, 66 S.W.3d 213, 220 (Tex. 2001). The trial court's decision to admit or exclude expert testimony is reviewed for abuse of discretion. *Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 718 (Tex. 1998). An expert witness may testify regarding scientific, technical, or other specialized matters if the expert is qualified, the expert's opinion is relevant, the opinion is reliable, and the opinion is based on a reliable foundation. *See* TEX. R. EVID. 702; *Whirlpool Corp. v. Camacho*, 298 S.W.3d 631, 637 (Tex. 2009).

### Qualification

Trend first argues that Hoppess in not qualified as an expert. Trend filed a motion to exclude Hoppess's testimony, and the trial court held a hearing on the

motion. Hoppess is an attorney who has represented both landowners and condemning authorities. Hoppess testified that he has rendered opinions on the value of real estate since 1978. However, Hoppess is not a licensed, certified appraiser. Because he is not a licensed or certified appraiser, Hoppess cannot refer to an appraisal prepared by him as "certified" or "licensed." TEX. OCC. CODE ANN. § 1103.201 (Vernon 2004).

Trend argues that because Hoppess is not a licensed, certified appraiser, he cannot testify as an expert. The Texas Appraiser Licensing and Certification Board may adopt rules for certifying or licensing an appraiser and rules relating to the education and experience required for certifying or licensing an appraiser. TEX. OCC. CODE ANN. § 1103.151 (Vernon Supp. 2010). The TALCB adopted an advisory opinion on October 20, 2006 concerning the requirement of a license or certification. The TALCB found that "an individual who wishes to render a value opinion for real property or provide an opinion about the quality of another real estate appraiser's work must obtain a license, certification, authorization, or registration from TALCB to engage in such real estate appraisal activities in Texas."

The TALCB opinion specifically addressed whether a real estate appraiser from another state who is not certified or licensed in Texas may testify as an expert witness in a Texas legal proceeding for the purpose of giving an estimate for the value of real property located in Texas or to rebut an appraisal for real property in Texas that was prepared by an appraiser licensed or certified by the TALCB. The TALCB found that

providing an expert opinion concerning the market value of real property located in Texas is an appraisal activity requiring a license or certification from TALCB.

Moore argues that Rule 702 of the Texas Rules of Evidence does not require a license or certification to testify as an expert in a condemnation case. In *State v. Northborough Center, Inc.*, the court found that Rule 702 does not require a witness to have a license in order to testify as an expert. *State v. Northborough Center, Inc.*, 987 S.W.2d 187, 194 (Tex. App.—Houston [14th Dist.] 1999), pet. den'd).

Although we harbor some doubt about Hoppess's qualifications to give an opinion on the value of real property for testimony in a condemnation proceeding, we will assume without deciding that Hoppess was qualified to testify as an expert about the value of the easement. We next consider whether his testimony was relevant and reliable.

**Relevance and Reliability**

An expert's opinion, to be admissible, must be relevant and reliable. *State v. Central Expressway Sign Associates*, 302 S.W.3d 866, 870 (Tex. 2009); *Exxon Pipeline Co. v. Zwahr*, 88 S.W.3d 623, 628 (Tex. 2002). To be relevant, the expert's opinion must be based on the facts; to be reliable, the opinion must be based on sound reasoning and methodology. *State v. Central Expressway Sign Associates*, 302 S.W.3d at 870.

Opinion testimony that is conclusory or speculative is not relevant evidence, because it does not tend to make the existence of a material fact more probable or less probable. *See* TEX. R. EVID. 401; *City of San Antonio v. Pollock*, 284 S.W.3d 809, 815 (Tex. 2009). Expert testimony is unreliable if it is no more than subjective belief or

unsupported speculation. *TXI Transp. Co. v. Hughes*, 306 S.W.3d 230, 239 (Tex. 2010); *Exxon Pipeline Co. v. Zwahr*, 88 S.W.3d at 629.

Trend challenges the admissibility of Hoppess's opinion on a number of grounds. We will focus on only one. Trend argues that Hoppess's opinions are based upon improper valuation methodology and that there are analytical gaps in Hoppess's analysis. Hoppess has not previously testified before a jury in a condemnation case about the value of land. He was designated as an expert in another case involving the value of an easement, and the trial court in that case excluded the testimony. Hoppess has only testified on fair market value of property that he owns.

Hoppess testified at trial that in order to determine the fair market value of the property, he first had to determine the highest and best use of the property. The highest and best use is defined as the reasonably probable and legal use of vacant land or an improved property, which is physically possible, appropriately supported, financially feasible, and that results in the highest value. *City of Sugar Land v. Home and Hearth Sugarland, L.P.*, 215 S.W.3d 503, 511 (Tex. App.—Eastland 2007, pet. den'd). The existing use of the land is its presumed highest and best use, but the landowner can rebut this presumption by showing a reasonable probability that when the taking occurred, the property was adaptable and needed or would likely be needed in the future for another use. *Exxon Pipeline Co. v. Zwahr*, 88 S.W.3d at 628.(Check page)

The property is currently used as irrigated cropland, and the land surrounding the property is also used as irrigated cropland. At the hearing to exclude his testimony, Hoppess testified that he determined the highest and best use of the property to be for

"investment purposes, either for development as rural recreational subdivision and/or industrial." Hoppess states in his report that the highest and best use is investment for future development as recreational subdivision or industrial without providing any analysis on how he arrived at his conclusion.

At trial, Hoppess testified that in his opinion agricultural use has not been the highest and best use of land for many years because it will not support the price of land. Again, Hoppess merely states his conclusion without providing any analysis.

Hoppess stated at trial that he looked at sixty-seven sales to determine highest and best use, but he does not provide any analysis to show that those sales support his conclusion on highest and best use. Hoppess said that he believes that the property lends itself in the reasonable future to be utilized as a rural recreational subdivision such as small horse farms. Hoppess did not provide any evidence to show a trend in the development of rural recreational subdivisions. Hoppess acknowledged that there are no adjacent tracts used for rural recreational subdivisions. Hoppess did not show that it was reasonably probable that the land would be used for industrial purposes or as a recreational subdivision. Consideration cannot be given to uses which are purely speculative. *City of Sugar Land v. Home and Hearth Sugarland, L.P.*, 215 S.W.3d at 511. Hoppess's testimony does not rebut the presumption that the current use of irrigated cropland is the highest and best use. Hoppess's opinion on highest and best use is conclusory and unsupported, and therefore, unreliable.

Hoppess testified that the highest and best use is key in establishing the fair market value. Hoppess also considered the highest and best use in his analysis of

damages to the remainder. Hoppess found the damages to the remainder to be $470,812. In assessing the damage to the remainder, Hoppess found that to utilize the property at its highest and best use, Moore would have to construct special crossings over the easement. Hoppess contends that the crossings are required by Chapter 756 of the Texas Health and Safety Code.

By way of comparison, Trend's expert, Ronnie Harris, testified that he found no evidence that the highest and best use of the land was anything other than the current use of irrigated cropland. Harris testified that there is no damage to the remainder if the easement does not interfere with the highest and best use. Harris stated that the property is still in use as cropland. Harris had recently viewed the property, and he could not tell that the pipeline was present. Harris concluded that there was no damage to the remainder.

Having found that Hoppess's testimony was unreliable because it was speculative and conclusory, we hold that the trial court erred in admitting the testimony. We sustain Trend's first issue on appeal. Because of our disposition of the first issue on appeal, we need not address the remaining issues. TEX. R. APP. P. 47.1.

Because Hoppess's testimony should not have been admitted, the evidence does not support the verdict for damages. When there is no evidence to support a damages verdict, the court of appeals should render a take nothing judgment as to that amount. *Larson v. Cactus Util. Co.*, 730 S.W.2d 640, 641 (Tex. 1987); *City of Emory v. Lusk*, 278 S.W.3d 77, 88 (Tex. App.—Tyler 2009, no pet.). If part of a damage verdict lacks sufficient evidentiary support, the proper course is to suggest a remittitur of that part of

the verdict. *City of Emory v. Lusk*, 278 S.W.3d at 88. The party prevailing in the trial court should be given the option of accepting the remittitur or having the cause remanded. *Id.*

The jury awarded $25,528 as the value of the easement and $222,642 as the damages to the remainder. The total amount of damages awarded is $248,170. There is evidence to support an award of damages to Moore for $21,180 as the value of the easement. There is no evidence to support the award for damages to the remainder. Subtracting $21,180 from $248,170 leaves a difference of $226,990. Accordingly, we suggest a remittitur in the amount of $226,990. Tex. R. App. P. 46.3.

## CROSS-POINT

Moore brings one cross-point in which she argues that the trial court erred by ordering Laura W. Moore, in her capacity as trustee for the estate of Laura W. Moore Living Trust, to remit part of the special commissioners' award to Trend because the award was only paid to Moore Pipeline Corridor, LLC. Moore asks that we modify the judgment to reflect that only Moore Pipeline is ordered to remit the difference in the special commissioners' award and the jury verdict. A party who seeks to alter the trial court's judgment must file a notice of appeal. Tex. R. App. P. 25.1(c). Moore did not file a notice of appeal, and therefore, we cannot consider her cross-point.

## CONCLUSION

We affirm the trial court's judgment awarding Trend a permanent easement and a temporary workspace easement. We affirm the trial court's judgment ordering Laura W. Moore, in her capacity as Trustee of the Laura W. Moore Living Trust, and Moore

Pipeline Corridor, LLC to remit to Trend the sum of $709,877.50. If Moore files a remittitur of an additional $226,990 within 12 days, we will reform the judgment and, as reformed, affirm. If the remittitur is not filed within 12 days from the date of this opinion, we will reverse the trial court's judgment and remand for a new trial. Our judgment in accordance with this opinion and Moore's subsequent action on the remittitur will be rendered 14 days from the date of this opinion.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
      Justice Reyna, and
      Justice Davis
      (Justice Davis concurs with a note) *
Affirmed in part and modified in part
Opinion delivered and filed December 1, 2010
[CV06]


      * (Justice Davis concurs only partially as he would reverse and remand completely for a new trial. No separate opinion will issue.)