Opinion issued November 24, 2015



In The

# Court of Appeals

For The

# First District of Texas

———————————

NO. 01-14-00706-CV

———————————

## ACCURATE PRECISION PLATING, LLC, Appellant

V.

## JUAN GUERRERO, GUERRERO PLATING TECHNOLOGY, LLC, AND ALLIED PLATING, LLC, Appellees

On Appeal from the 215th District Court
Harris County, Texas
Trial Court Case No. 2013-33528A

## MEMORANDUM OPINION

In this commercial litigation case, appellant Accurate Precision Plating,

LLC, sued appellees Juan Guerrero, Guerrero Plating Technology, LLC, and

Allied Plating, LLC, for breach of contract, intentional interference with business

relations, and misappropriation of trade secrets. In two issues, appellant contends that the trial court abused its discretion in refusing to allow APP's owner, Alberto Mani, to testify at trial regarding future lost profits, and that the exclusion of Mani's testimony was harmful error. We affirm.

## Background

In 2007, Mani and Juan formed APP. Mani, the majority owner, was the company's President, and Juan, the minority owner, its Vice-President. In 2012, Mani learned that Juan intended to leave APP to form his own plating company. Thereafter, Mani and Juan executed a release and indemnity agreement under which Mani agreed to pay Juan $300,000 for his interest in APP and one year's salary of more than $100,000. The agreement also included a non-compete agreement under which, with the exception of three of APP's customers, Juan agreed not to contact, or disclose the identity of, any of APP's then-existing customers for a period of ten years. At the time the agreement was executed, Juan had already formed his own company, Guerrero Plating Technology.

In May 2013, well after Juan's departure, APP received two purchase orders from Sauer Machine, one of its customers. The order forms, however, were addressed to Juan's attention and referenced a company identified as Allied Plating, LLC. Subsequent investigation revealed that this was a company formed by Juan's father, who was an APP employee at the time. APP subsequently filed

2

suit against Juan for breach of contract, and against Juan, Guerrero Plating Technology, and Allied Plating for misappropriation of trade secrets and tortious interference with business relations. In its suit, APP sought damages for past and future lost profits.[1] The case proceeded to trial in January 2014.

During trial, Mani testified about APP's claim for lost profits based on the loss of business from five of its customers—Sauer Machine, Innova Integrated Solutions, Precision Machined Components, Peridot Corporation, and Precision Energy Service Weatherford. Mani testified that APP's combined sales from these five customers had decreased 76% in the year following Juan's departure, and that the only explanation for the loss of sales was Juan's interference with APP's customers.

When appellees' counsel took Mani on voir dire, Mani testified that he had no degree, certification, or experience in accounting, economics, or business forecasting, and that he did not know what steps an accountant or economist would take to calculate lost profits for specific customers. To determine APP's profit from a particular customer, Mani testified that he adds the cost of a particular plating job to the cost of labor and, from that figure, is able to determine the profit margin. Mani testified that APP targets a general profit margin, and that he

---

[1]     APP also sought a temporary restraining order and temporary injunction which the trial court granted.

3

"shoot[s] for a minimum of 25 percent." Later, Mani testified that he calculates future lost profits by taking a customer's sales over one year, projecting them over time without increasing sales, and multiplying that figure by twenty percent. Mani testified that "[e]ven though the target with some customers can be higher or lower, I think 20 percent is a fair number."

Mani testified that, although market conditions "vary from time to time," he does not believe that the plating business is a risky one and he had not seen a large fluctuation in conditions to date. Mani admitted that he did not know why Innova and Precision Machined were no longer sending work to APP. He testified that he did not know whether Peridot, Precision Machined, Innova, and Precision Energy sent work to companies other than Guerrero Plating Technology and Allied. He further testified that, of its 426 customers, APP had a contract with only one and had to bid on projects for the others.

When asked under what circumstances he has had to calculate lost profits for customers, he replied that he has done it if the "market change[s]." Mani testified that he has calculated lost profits for gross sales but he did not understand when asked whether he had ever calculated lost profits for net sales. Following the voir dire examination, the trial court sustained appellees' objection to Mani's proposed testimony about APP's future lost profits.

4

APP subsequently made a bill of review during which Mani testified as follows:

Q: [I]f you were allowed to testify regarding lost future profit, could you explain the basis that you would utilize to calculate those lost profits?

. . . .

A: I will take these sales, project them over time and do the profit of 20 percent without increasing sales up.

. . . .

Q: So you could take those numbers and do what with them to calculate your future loss?

A: Basically, add them up and do a projection of these numbers.

Q: Okay. And how would you do that?

A: I will do it over—well, you know, we have a non-compete for ten years. So one year has elapsed. So I will do it over nine years.

When asked about the circumstances under which he had previously calculated future lost profits, Mani testified that he once performed a calculation in order to provide a price quote to a potential client and, on another occasion, when he evaluated a price increase for a current customer. When asked what he used to calculate the future lost profit for the quote, he testified that he used certain factors for determining the cost of the plating process but that he would not disclose his pricing strategies because the information was proprietary.

5

At the conclusion of trial, the jury rendered a verdict in favor of APP, awarding $230,112.28 in past lost profits damages.[2]  On July 22, 0214, the trial court signed its final judgment.  This appeal followed.

**Standard of Review**

The admission or exclusion of evidence is within the sound discretion of the trial court.  *Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608, 617 (Tex. 2000); *Simien v. Unifund CCR Partners*, 321 S.W.3d 235, 239 (Tex. App.—Houston [1st Dist.] 2010, no pet.).  A trial court abuses its discretion when it acts without reference to any guiding rules or principles.  *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 754 (Tex. 1995).

For the exclusion of evidence to constitute reversible error, the complaining party must demonstrate that (1) the trial court committed error, and (2) the error was reasonably calculated to, and probably did, cause rendition of an improper judgment.  TEX. R. APP. P. 44.1(a); *Owens–Corning Fiberglas Corp. v. Malone*, 72 S.W.2d 35, 43 (Tex. 1998).  In determining if the excluded evidence probably resulted in the rendition of an improper judgment, the appellate court reviews the entire record.  *Able*, 35 S.W.3d at 617; *Hahn v. Love*, 394 S.W.3d 14, 35 (Tex. App.—Houston [1st Dist.] 2012, pet. denied).

---

[2]     The jury found in favor of APP on all of its claims against appellees but it found that Allied's misappropriation was excused.

**Discussion**

APP first contends that the trial court abused its discretion when it refused to allow Mani to testify by application of the Property Owner Rule. APP argues that Mani's testimony regarding APP's future lost profits with regard to five of its customers should have been allowed. It also asserts that Mani's proposed testimony was reliable and based on objective facts, and that its exclusion was harmful error.

Rule of Evidence 701 provides that "[i]f a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; and (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue." TEX. R. EVID. 701. Rule 701 has been interpreted to include a Property Owner Rule, which holds that a property owner is qualified to testify to the value of his property even if he is not an expert and would not be qualified to testify to the value of other property. *Reid Rd. Mun. Util. Dist. No. 2 v. Speedy Stop Food Stores, Ltd.*, 337 S.W.3d 846, 852–53 (Tex. 2011); *see Del Mar Capital, Inc. v. Prosperity Bank*, No. 01-14-00028-CV, 2014 WL 5780302, at *5 (Tex. App.—Houston [1st Dist.] Nov. 6, 2014, no pet.) ("The Property Owner Rule, as its name suggests, excepts property owners from the requirement that an expert testify on the valuation of the property.") The rule is based on the presumption that a property owner is familiar with his property

7

and its value. *Id.* at 853. However, the property owner's testimony must be based on market value, not intrinsic value or some speculative value of the property.[3] *See Natural Gas Pipeline Co. of Am. v. Justiss*, 397 S.W.3d 150, 155 (Tex. 2012) (citing *Porras v. Craig*, 675 S.W.2d 503 (Tex. 1984)).

We are unaware of any case—nor has appellant directed us to any—in which the Property Owner Rule has been applied to testimony regarding lost profits, either past or future. Rather, the cases in which courts have considered application of the Property Owner Rule involve *property*, real or personal, that has a market value. *See e.g.*, *Justiss*, 397 S.W.3d at 155 (applying Property Owner Rule to property owners' claims of diminished value to homes and land due to permanent nuisance); *Reid Rd. Mun. Util. Dist.*, 337 S.W.3d at 846 (concluding officer of defendant company's general partner was not qualified to testify to market value of partnership property under Property Owner Rule); *Porras*, 675 S.W.2d at 503 (applying Property Owner Rule to property owner's testimony regarding valuation of land); *DZM, Inc. v. Garren*, 467 S.W.3d 700, 705 (Tex.

---

[3] "Market value is 'the price the property will bring when offered for sale by one who desires to sell, but is not obliged to sell, and is bought by one who desires to buy, but is under no necessity of buying.'" *City of Harlingen v. Estate of Sharboneau*, 48 SW.3d 177, 182 (Tex. 2001) (citation omitted); *Village Place, Ltd. v. VP Shopping, LLC*, 404 S.W.3d 115, 133 (Tex. App.—Houston [1st Dist.] 2013, no pet.). Evidence of price paid, nearby sales, tax valuations, appraisals, online resources, and any other relevant factors may be offered to support a valuation claim. *See Natural Gas Pipeline Co. of Am. v. Justiss*, 397 S.W.3d 150, 159 (Tex. 2012).

8

App.—Houston [14th Dist.] 2015, no pet.) (finding property owner's testimony offered under Property Owner Rule regarding fair market value of various items of leased property was insufficient to establish value of items at time of alleged conversion); *Smirl v. State*, No. 01–12–00989–CV, 2014 WL 2507639, at \*4–6 (Tex. App.—Houston [1st Dist.] June 3, 2014, no pet.) (mem. op.) (upholding summary judgment against owner of leasehold because owner's affidavit testimony was insufficient evidence of valuation of leasehold interest); *City of Emory v. Lusk*, 278 S.W.3d 77, Tex. App.—Tyler 2009, no pet.) (applying Property Owner Rule to easement in inverse condemnation case); *Royce Homes v. Humphrey*, 244 S.W.3d 570 (Tex. App.—Beaumont 2008, pet. denied) (applying Property Owner Rule to owner's claimed damages to home and land); *Lefton v. Griffith*, 136 S.W.3d 271 (Tex. App.—San Antonio 2004, no pet.) (applying Property Owner Rule to owner's valuation of store inventory and home). APP did not argue at trial—nor does it assert on appeal—that the "property" about which Mani sought to testify has a market value. The Property Owner Rule does not apply to the facts in this case.[4]

---

[4] APP also asserts that the trial court abused its discretion in excluding Mani's testimony regarding APP's future lost profits when it erroneously applied Rule of Evidence 702. However, the only reference to Rule 702 in the record before us is by APP's counsel. In response to appellees' objection to Mani's proposed testimony regarding future lost profits, APP's counsel stated, "As a layman, Judge, and as a business owner, he is clearly capable, under Rule 702, of testifying as to the value of his property, not only in past but in the future as far as lost profits are

9

Moreover, Mani's proposed testimony does not constitute competent evidence from which his claimed future lost profits could be calculated with reasonable certainty. The rule concerning adequate evidence of lost profits damages is well established:

> Recovery for lost profits does not require that the loss be susceptible of exact calculation. However, the injured party must do more than show that they suffered some lost profits. The amount of the loss must be shown by competent evidence with reasonable certainty. What constitutes reasonably certain evidence of lost profits is a fact intensive determination. As a minimum, opinions or estimates of lost profits must be based on objective facts, figures, or data from which the amount of lost profits can be ascertained. Although supporting documentation may affect the weight of the evidence, it is not necessary to produce in court the documents supporting the opinions or estimates.

*ERI Consulting Engineers, Inc. v. Swinnea*, 318 S.W.3d 867, 878–79 (Tex. 2010) (quoting *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex. 1992)). Lost profits must be based on net profits, not gross revenues. *See Heine*, at 83 n.1.[5]

Based on the record before us, we conclude that APP did not provide competent evidence of its future lost profits to a reasonable certainty. Mani testified that APP has a general target profit margin of twenty-five percent but did

---

concerned." Given the substance of the statement, however, it appears that counsel was attempting to introduce Mani's testimony under the Property Owner's Rule under Rule 701.

[5] "Net profits" is defined as the difference between a business's total receipts and all of the expenses incurred in carrying on the business. *Texaco, Inc. v. Phan*, 137 S.W.3d 763, 771 (Tex. App.—Houston [1st Dist.] 2004, no pet.).

10

not explain the basis for it, and then later stated that he considered twenty percent to be a "fair number," but offered no explanation why. In other words, Mani premised his entire future lost profits analysis on a 20% [or 25%] profit margin but offered no proof that such a profit margin had a connection to the facts. Mani offered no evidence of what APP's profit margin had been historically and thus failed to connect his future lost profits analysis to objective facts, figures, or data. *See Heine*, 835 S.W.2d at 83.

Mani also failed to demonstrate that the purported damage APP suffered was connected to appellees' conduct, or to account for, or even consider other factors that may have caused APP to lose revenue. Although Mani testified that the only explanation for the loss of the five customers was appellees' interference with APP's business, he later stated that APP had a contract with only one customer and had to submit bids to the others, and that he did not know why two of its customers no longer did business with APP. *See Heine*, 835 S.W.2d at 85 ("[T]he bare assertion that contracts were lost does not demonstrate a reasonably certain objective determination of lost profits."); *Rusty's Weigh Scales & Serv., Inc. v. N. Texas Scales, Inc.*, 314 S.W.3d 105, 111 (Tex. App.—El Paso 2010, no pet.) (concluding that evidence in support of plaintiff's claim for lost profits was insufficient where claim was based in part on assumption that it lost customers based on competitor's alleged use of plaintiff's software despite fact that plaintiff

11

was not under contract with its clients). Further, while he testified that he had calculated lost profits based on gross sales, he was unable to state whether he had ever calculated future lost profits based on net sales. *See Heine*, 835 S.W.2d at 83 n.1 (noting lost profits must be based on net profits rather than gross revenues). Simply put, Mani's testimony does not constitute the reasonably certain objective evidence upon which a calculation of future lost profits may be based. *Heine*, 835 S.W.2d at 84; *Fraud-Tech, Inc. v. Choicepoint, Inc.*, 102 S.W.3d 366, 381 (Tex. App.—Dallas (Tex. App. 2003, pet. denied) (noting mere speculation by plaintiff does not constitute objective information needed to establish lost profits). Accordingly, we conclude that the trial court did not abuse its discretion in sustaining appellees' objection to Mani's testimony regarding APP's future lost profits. We overrule APP's first issue.[6]

## Conclusion

We affirm the trial court's judgment.[7]

---

[6] In light of our disposition, we do not reach APP's issue regarding whether the exclusion of Mani's testimony was harmful. *See* TEX. R. APP. P. 44.1, 47.1.

[7] We further grant appellees' unopposed motions to dismiss their conditional cross-appeals.

Russell Lloyd
Justice

Panel consists of Justices Higley, Huddle, and Lloyd.