

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  |  |  |
|---|---|---|
| | § | |
| LAKESHA SAMUELS and | | No. 08-13-00126-CV |
| COREY SAMUELS | § | |
| Appellants, | | Appeal from the |
| | § | |
| v. | | County Court at Law No. 3 |
| | § | |
| SAYED NASIR, | | of Tarrant County, Texas[1] |
| Appellee. | § | |
| | | (TC# 2011-008740-3) |
| | § | |

## **O P I N I O N**

LaKesha and Corey Samuels appeal a trial court judgment rendered in favor of their former landlord for breach of a lease agreement and conversion of personal property. In three issues, Appellants seek reversal and rendition of a take-nothing judgment or, in the alternative, remittitur, contending that the court's damages award was excessive and that the evidence was legally and factually insufficient to support several expenses their landlord claims to have incurred. We affirm as to Appellant LaKesha Samuels. We affirm in part as to Appellant Corey Samuels and suggest a remittitur of damages assessed against him.

**DISCUSSION**
**FACTUAL HISTORY**
*The Samuels-Nasir Lease*

---

[1] This case was transferred from the Fort Worth Court of Appeals, and we decide it in accordance with the precedent of that court. TEX.R.APP.P. 41.3.

On January 15, 2011, Appellants agreed to rent a partially-furnished house in Fort Worth ("the Property") from Appellee Sayed Nasir and signed a one-year lease agreement. The lease sets rent for the house at $1,280.00 per month and rent for furniture inside the house at $160.00 a month. The lease further states that if rent is not remitted by the first of the month, a $25.00-per-day late fee will accrue until payment is made. In the event that the tenants wished to terminate the lease early, the lease required thirty-day written notice to Nasir. Abandonment or vacation of the property without prior notice to the landlord was prohibited under the lease's terms.

### *The Samuels Divorce and Subsequent Rent Payment Disputes*

In June 2011, Appellants filed for divorce. As a result of financial hardship from the divorce, the Appellants fell behind on their financial obligations and missed the rent payment due on July 1. Nasir notified LaKesha Samuels that she and her husband were delinquent on rent via a July 6 e-mail. Corey Samuels submitted a check for $1,280.00 to Nasir ("the First Check"). LaKesha Samuels also submitted a check dated August 1, 2011, for $1,280.00 to Nasir with the memo line stating "July Rent" ("the Second Check"). The testimony is undisputed that the first two checks the Appellants tendered did not clear. Nasir received the First Check toward the end of July, and it was rejected by the bank due to insufficient funds. The Second Check was refused because the Alaska state courts had frozen LaKesha Samuels' bank account pending the outcome of divorce proceedings.

Upon finding out that the First Check for July rent had bounced, Lakesha sent an e-mail to Nasir explaining that the Second Check she sent for August would also likely be returned as well if Nasir tried to deposit it due to the freeze on her account. She stated that she was speaking with her lawyer to try and get some funds unfrozen so she could pay the rent.

On July 31, Nasir sent LaKesha Samuels an e-mail confirming that the First Check for

2

July rent was returned. Nasir then proposed a settlement agreement. If the Appellants paid full rent for the months of July and August on August 1, 2011 and returned "[a]ll [his] furniture . . . in same condition as original [sic][,]" Nasir would agree to reduce the July late payment to $350.00, not require them to buy the washer-dryer and lawnmower, and allow them to vacate the property at the end of August 2011.

The parties dispute whether a third check the Appellants purportedly tendered in August ("the Third Check") cleared and was deposited in Nasir's account. At trial, LaKesha Samuels presented a printout of a screenshot of a Microsoft Word document containing another pasted, grainy, barely legible screenshot of an MECU Bank Account Access web page. The web page shows a copy of an MECU check ending in 2134 with a bank annotation that the check cleared August 3. From what is legible, the check appears to be made out to the order of Nasir in the amount of $1,280.00 for "August Rent." Like the Second Check, the Third Check appears to be dated August 1, 2011, although the copy is nearly illegible. Appellants maintain that the screenshot reflecting the cleared check is proof that Nasir deposited the money and that they are not delinquent on August rent.

Nasir denied having ever seen the Third Check and claimed the money from the Third Check never entered his account. As proof, he submitted a copy of his Chase Bank statement current through August 11. The bank statement shows that a $1,380.00 deposit was made on July 29 ("the July 29 Deposit"). Another deposit of $2,560.00 was made on August 2 ("the August 2 Deposit"). The bank statement does not specify from what sources either deposit came. The bank statement further shows that a check with the last four digits 9997 valued at $1,280.00, i.e. the First Check, was returned on August 2. On August 5, the bank returned another $1,280.00 check with the last four digits 2548, i.e., the Second Check, because the

3

account for that check had been frozen. The origin and disposition of the remaining $1,380.00 deposited into Nasir's account during that time period remains unknown. Nasir's bank statement does not reflect that any other deposits took place for the period ending August 11.

### *Vacating the Property and Aftermath*

Nasir sent LaKesha Samuels a Notice to Tenant to Pay or Vacate on August 2. The notice was delivered via certified mail on August 3. The notice states that she owed $2,560.00 for July and August rents plus $750.00 in late fees. The notice further states that Samuels must tender payment in full for these charges within three days or else vacate the premises no later than August 15.

On August 7, Nasir sent LaKesha Samuels an e-mail acknowledging receipt of two payments for the months of July and August, telling her to disregard the certified letter he had previously sent. He also informed her that she needed to tender "the difference of payment due to Washer/dryer," $12.00 in returned check fees, the late payment, and expenses related to air conditioning work. Nasir later testified at trial that at the time he sent this e-mail rescinding the notice to vacate, he was unaware the checks had been returned.

On August 31, the Appellants vacated the Property. Nasir denied that the Appellants had given thirty-days-notice to vacate. LaKesha conceded at trial that she did not give notice because, based on Nasir's e-mail, she believed there was a mutual understanding that the Appellants would vacate the property on August 31.

Nasir testified that on September 2, he passed by the house and noticed that it did not look like anyone was living there. He then entered the backyard, looked in through the window, and saw that some furniture was missing. After calling the Fort Worth Police Department to ask if he could enter the property, Nasir did so. Nasir further testified that before he entered, a

4

neighbor had told him that the house garage door had been open, so the neighbor had closed it.

Nasir claimed the house was "in really miserable shape," that a coffee table and night table were gone, and another night stand "was all messed up[.]" Nasir also stated that furniture in the master bedroom was damaged, and that a twin bed in another room was missing, along with the washer and dryer.

On September 13, LeKesha forwarded Corey Samuels an e-mail she received from Nasir. In Nasir's e-mail, also dated September 13, he appears to repudiate receipt of payments, stating that "[t]wo bad checks [were] deposited on August 2.2011. [sic]" He then identifies the checks as the First and Second Checks with check numbers ending in 2548 and 9997, respectively. He also references a previous e-mail he sent in which he made a monetary demand of the Appellants and clarifies that the demand included "the missing bed from master bedroom, washer/dryer, solid wood coffee table/ one end table [sic] and Garage door opener and door keys."

## PROCEDURAL HISTORY

Nasir filed suit against the Appellants in county court for breach of contract, conversion, and theft of property, seeking $19,100.00 in damages--$7,680.00 for unpaid rent from July through December 2011, $5,500.00 in late fees, $3,400.00 for cleaning and furniture replacement expenses, $1,520.00 for the value of the purportedly stolen furniture, and a $1,000.00 fine under the Texas Theft Liability Act. Appellants appeared *pro se* at trial. Following trial, the court entered judgment against the Appellants. Per the judgment's terms, Lakesha Samuels is liable for $2,584.00 plus $1,000.00 in damages for violation of the Texas Theft Liability Act and $2,000.00 in attorney's fees. Corey Samuels is liable for $8,270.00 plus court costs.

The trial court clarified orally that both Appellants would be jointly and severally liable for $2,584.00, which represented the amount of rent for July and August plus the returned check

5

fees. Corey Samuels was held jointly and severally liable for $2,460.00[2] and separately liable for $1,550.00 in damages and $1,600.00 in removed personal property. The Appellants obtained counsel, then filed a motion for a new trial and a motion for finding of facts and conclusions of law. The trial court denied the motion for new trial, and denied the motion for findings of fact and conclusions of law as untimely. This appeal followed.

## DISCUSSION

In three issues, Appellants challenge the trial court's damages judgment on the issues of rent payment, Nasir's clean-up expenses, the value of missing furniture, and the amount as a whole for legal and factual sufficiency.

### *Standard of Review: Legal and Factual Sufficiency*

We sustain a legal sufficiency challenge when the trial court's decision is erroneous as a matter of law because (1) there is "a complete absence of evidence of a vital fact," (2) "the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact," (3) there is "no more than a mere scintilla" of evidence proving a vital fact; or (4) the evidence conclusively establishes the opposite proposition of a plaintiff's proffered vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005). We may set aside a damages verdict as legally insufficient "only if the evidence at trial would not enable reasonable and fair-minded people to reach the verdict under review." *Garza de Escabedo v. Haygood*, 283 S.W.3d 3, 6 (Tex.App.--Tyler 2009, pet. granted), *aff'd sub nom Haygood v. De Escabedo*, 356 S.W.3d 390 (Tex. 2011).

In a factual sufficiency challenge, "[t]he court of appeals must consider and weigh all of the evidence, and can set aside a verdict only if the evidence is so weak or if the finding is so

---

[2] It is unclear how the trial court arrived at this number. The amount of July and August rent totaled $2,560.00, not $2,460.00. It also previously stated that it would hold both Appellants jointly and severally liable for $2,584.00, which was the amount of rent plus the returned check fees.

against the great weight and preponderance of the evidence that it is clearly wrong and unjust."

*Dow Chemical Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001).

### *Liability for July and August Rent Payments*

In Issue One, Appellants maintain that we must set aside the court's award for July and August rent based on their good-faith attempt to tender payment to Nasir. We disagree.

The undisputed evidence shows that Nasir's bank refused to honor either check for valid reasons. Appellants cite no authority showing that tendering a bad check absolves them of liability for payments. Appellants also argue that the Third Check's clearance from their bank account absolves them of liability for at least one of the two delinquent months. But the evidence as to whether Nasir actually deposited the Third Check is ambiguous. Nasir maintains in his brief that the August 2 Deposit represents the amount from the First and Second Checks that ultimately were refused, and at trial, he denied ever having seen or deposited the Third Check. However, the origins of the $1,380.00 July Deposit remain unaccounted for, and the record evidence seems to suggest that save for a $100.00 discrepancy, every time Nasir received a check from the Appellants, he made concurrent deposits into his Chase account from unidentified sources in amounts that corresponded with the exact value of the Appellants' checks. Nasir testified he received the First Check for $1,280.00 toward the "end of July." His bank statement reflects that he made a $1,380.00 deposit on July 29. Nasir also does not dispute that he received the Second Check for $1,280.00 dated August 1 "For July Rent." To the extent it is legible, Appellants' bank statement says the Third Check for $1,280.00 also dated August 1 and made out to Nasir for "August rent" cleared on August 3. Together, the Second and the Third Check amounts to $2,560.00. Nasir's bank records reflect that on August 2, Nasir made $2,560.00 worth of deposits. This seems to suggest that although the First and Second Checks

7

were returned, Nasir retained the full amount of the Third Check.

That being said, this evidence is far from conclusive. Instead, Nasir's bank records and LaKesha Samuels' copy of the MECU cleared check created a fact issue on payment to be resolved by the trial court, rendering the evidence presented legally sufficient. *See Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 77 S.W.3d 253, 262 (Tex. 2002)(noting that "[m]ore than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about a vital fact's existence"). Further, although the MECU account screenshot appears to show that the Third Check to Nasir cleared, given the unusual form and practical illegibility of the evidence Appellants presented in support of payment, we cannot say that the trial court's finding that she did not pay Nasir rent for the month of August went against the great weight and preponderance of the evidence. In viewing the evidence in the light most favorable to the verdict and in a neutral light, we find the evidence underpinning this portion of the judgment to be legally and factually sufficient. Issue One is overruled.

### Damage to the House and Missing Furniture

In Issue Two, Appellant Corey Samuels contends that the trial court erred by assessing judgment against him for $1,550.00 for property damage when Nasir only submitted receipts worth $795.00. Corey Samuels further contends that there is legally and factually insufficient evidence to support the $1,600.00 amount for removed property, since Nasir failed to tender receipts as to their value.

"A party seeking recovery for the cost of repairs must prove their reasonable value." *Fort Worth Hotel Ltd. P'ship v. Enserch Corp.*, 977 S.W.2d 746, 762 (Tex.App.--Fort Worth 1998, no pet.). "Receipted bills are admissible to show what the injured party actually paid for repairs."

*Foxx v. DeRobbio*, 224 S.W.3d 263, 268 (Tex.App.--El Paso 2005, no pet.). "However, mere proof of amounts charged or paid" is insufficient to justify recovery; "such amounts ordinarily cannot be recovered without evidence showing the charges were reasonable." *Fort Worth Hotel Ltd. P'ship*, 977 S.W.2d at 762-63. Likewise, estimates may form the basis for a damages judgment, provided the estimate "affords a reasonable basis for the jury to calculate damages[.]" *Rhey v. Redic*, 408 S.W.3d 440, 455 (Tex.App.--El Paso 2013, no pet.).

Here, as to the $1,550.00 in property damage, Nasir furnished several receipts for carpet cleaning. The first receipt admitted at trial was an invoice from Accurate Carpet Cleaning & Restoration Company for $300.00. Nasir testified that Accurate cleaned the carpet in his house, but informed him that they could not remove certain stains. As such, Nasir hired a second company, "All Brite," to remove the stains and re-patch the carpet. Nasir testified that the additional carpet cleaning cost $195.00, but that "for the spots that could not be cleaned anymore, he told me that it is going to cost me about 300 to do cleaning and a patch." There was also another spot in the master bedroom that could not be cleaned which could be patched for $150.00. The All Brite receipt in the record is somewhat ambiguous, but it does appear to list charges for $195.00, $300.00, and $150.00. Nasir also claimed that he had another $150.00 carpet cleaning expense that was not included in a list of documents his attorney handed him while on the stand. In total, testimonial and receipt evidence shows that Nasir allegedly incurred $1,095.00 for carpet cleaning, repairs, and replacements. The trial court could have believed that the charges were reasonable, given the extent of the damage to the carpet and the need for repairs. Nasir also submitted a $500.00 invoice from a company name CondoCare for drywall repair and touch-up painting throughout the house. The trial court could have believed that these charges were reasonable and attributable to Appellants as well. *See Dawson v. Briggs*, 107

9

S.W.3d 739, 754 (Tex.App.--Fort Worth 2003, no pet.)(causal nexus may be found between event and injuries when "general experience and common sense will enable a layperson fairly to determine the causal nexus . . . ").  In total, Nasir provided the trial court with evidence that he had incurred $1,595.00 in reasonable repair damages.  We cannot say the trial court erred by entering a judgment less than that amount.  The evidence on the issue of repairs is legally and factually sufficient to support that portion of the judgment.

As for the furniture and other items, Appellants admitted that they were in possession of the washer/dryer unit, and there is no record evidence demonstrating they purchased the unit in full from Nasir.  Nasir's testimony that the washer and dryer's value was about $500.00 was proper lay opinion testimony.  Further, although Appellants denied taking the coffee table and end tables, Nasir maintained that they went missing after Appellants vacated the house.  This created a fact issue that the trial court was free to resolve in Nasir's favor and attribute to Appellants.  Nasir's failure to provide a receipt for the coffee table is not fatal, since he had personal knowledge of its $700.00 value from the date of purchase.  Finally, Nasir's testimony was also sufficient to establish that a bed went missing, raising an inference that the missing bed was attributable to Appellants, and place the bed's value was between $400.00 and $500.00.  In light of this evidence, we cannot say that it was unreasonable for the trial court to conclude the value of a washer and dryer, a bed, a coffee table, and end tables to total $1,600.00.  The evidence on this point is legally and factually sufficient as well.  Issue Two is overruled.

### *Remittitur*

In Issue Three, Appellants argue that they are entitled to remittitur, since the damages the trial court ordered were excessive.  Appellants request we vacate the judgment and remand with a suggested remittitur of $4,599.00, assessed jointly and severally against both Appellants --

10

$795.00 in damages, $500.00 for conversion, $24.00 in returned check fees, and $2,000.00 in attorney's fees. Based on the facts presented in this record, we agree that the judgment rendered against Corey Samuels, but not LaKesha Samuels, was factually insufficient due to an apparent calculation error. As such, we suggest remittitur with respect to Corey Samuels for the reasons, and in the manner, that follow.

### Standard of Review and Applicable Law

TEX.R.APP.P. 46.3 permits this Court to suggest a remittitur where an "appellant complains there is insufficient evidence to support an award and the court of appeals agrees, but concludes there is sufficient evidence to support a lesser award." *Hernandez v. Sovereign Cherokee Nation Tejas*, 343 S.W.3d 162, 176 (Tex.App.--Dallas 2011, pet. denied)(suggesting remittitur where evidence supporting actual damages was held to be partially insufficient). The power to issue a remittitur suggestion under the Rules hinges on whether the evidence fails to support the verdict in whole or in part. *Larson v. Cactus Util. Co.*, 730 S.W.2d 640, 641 (Tex. 1987). "If a court of appeals holds that there is no evidence to support a damages verdict, it should render a take nothing judgment as to that amount." *Id*. "If part of a damage verdict lacks sufficient evidentiary support, the proper course is to suggest a remittitur of that part of the verdict." *Id*. "The party prevailing in the trial court should be given the option of accepting the remittitur or having the case remanded" for a new trial. *Id.*; *see also City of Emory v. Lusk*, 278 S.W.3d 77, 89 (Tex.App.--Tyler 2009, no pet.)(conditionally affirming damages award after proposing remittitur and allowing appellants to either accept or reject the proposal within 15 days).

### Analysis

Appellants reiterates several arguments in Issue Three that were otherwise raised or

addressed in their previous two issues. However, in reviewing the judgment as a whole for factual sufficiency, this Court notes an apparent arithmetic irregularity in the trial court's judgment with respect to Corey Samuels. The trial court made clear in its oral judgment[3] that it would hold Corey Samuels jointly and severally liable for the costs of rent and the returned check fees, as well as separately liable for repair costs and the furniture and appliance conversion. In tabulating this amount, the trial court stated that Corey Samuels would be liable for $8,270.00. However, the evidence shows that the judgment is supportable on these grounds only up to $5,734.00, which includes the $2,584.00 in joint and several liability for two months' rent and returned check fees,[4] $1,550.00 in separate liability for damages, and $1,600.00 in removed personal property. The $2,536.00 discrepancy, apparently the result of a mathematical error, cannot be accounted for, nor can it be supported as factually sufficient when viewed in light of the enumerated grounds for which the trial court wished to hold Corey Samuels liable in its oral judgment.

Thus, we sustain Issue Three as to Appellant Corey Samuels. We overrule Issue Three as to Appellant LaKesha Samuels. We set out the terms of remission in the conclusion below.

## CONCLUSION

We affirm the trial court's judgment in its entirety as to Appellant LaKesha Samuels. Because the evidence is factually insufficient in part to support the judgment levied against

---

[3] "A judgment is 'rendered' when the trial court's decision upon the matter submitted to it for resolution is officially announced either orally in open court or by memorandum filed with the clerk." *Henry v. Cullum Co., Inc.*, 891 S.W.2d 789, 792 (Tex.App.--Amarillo 1995, writ denied); *see also Wittau v. Storie*, 145 S.W.3d 732, 735 (Tex.App.--Fort Worth 2004, no pet.). In light of the oral judgment's conclusiveness in disposing of all claims and issues, the trial court's oral remarks at the conclusion of trial constituted the operative and effective judgment we review, with the written reduction of the judgment serving as a subsequent ministerial act. *See Wittau*, 145 S.W.3d at 735 (where the trial court's oral remarks and written remarks effectively dispose of all parties and claims, the operative judgment is whichever comes first in time).

[4] We use this number and not $2,460.00 because the court made its intention clear that in intended to hold the Samulses jointly and severally liable for the full amount of two months' rent and check fees.

Corey Samuels, we reverse the damages judgment with respect to him. We must also give Mr. Samuels the option of accepting a suggested remittitur or having the cause remanded for a new trial on damages. *See* TEX.R.APP.P. 46.3; *City of Emory*, 278 S.W.3d at 89. We suggest a remittitur of $2,536.00 to Appellant Corey Samuels. Mr. Samuels has fifteen days from the date of this opinion's issuance to decide whether to accept the Court's remittitur. If Mr. Samuels timely files a remittitur in that amount, the judgment will be reformed to reflect a damages award of $5,734.00 and affirm it in all respects. *See id.* If a remittitur is not timely filed, the trial court's judgment as to Mr. Samuels will be reversed and remanded for a new trial on damages. *See id.*

October 3, 2014

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.
Rivera, J. (Not Participating)