# NO. 12-17-00093-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *LARRY LOTT, D/B/A LARRY LOTT INTERIORS, APPELLANT* | § | *APPEAL FROM THE 7TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *BOBBY BROWN, APPELLEE* | § | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Larry Lott appeals the trial court's judgment and award of damages rendered against him for breach of contract and quantum meruit to Bobby Brown. Lott challenges the legal and factual sufficiency of the evidence on appeal. We reverse in part, affirm in part, and suggest a remittitur of a portion of the damages awarded in the trial court's judgment.

## BACKGROUND

Lott is an interior designer who provides his expertise in both remodeling projects and home decorations. In such capacity, a wealthy individual hired Lott to oversee an expansive home remodeling project. Lott contacted Brown in January 2013 and requested that he submit a bid for specialized painting, plaster, and accent molding work in various areas of the home. Brown performed previous work for Lott and was well regarded in the community for his artistic, painting, and craftsman skills. After Lott provided information regarding the scope of work the client requested, Brown submitted a proposal to which Lott agreed.

Brown began work on the project in February 2013, and over the next eighteen months, he performed extensive painting, plastering, molding, and other specialized detail work throughout the house. During this period, the scope and amount of work the client wanted Brown to do increased and changed to the point that Brown's original proposal was less than one-third of the

money he ultimately received for the services he provided. Though Brown's original proposal included an initial "draw," which Lott paid to Brown before work commenced, Brown's practice was to bill Lott only when he completed a particular task, at which time Lott paid Brown for the completed task.

At some point during the project, Brown became increasingly frustrated with what he perceived as Lott's pattern of arbitrarily reducing invoices he submitted for completed work, with reductions totaling $56,000 over the course of the project. Brown's frustration climaxed when Lott delayed paying Brown for elaborate art work he painted on a ceiling in the home. Subsequently, Brown approached Lott's client directly for payment, and after receiving the client's check for that completed task, Brown packed up his equipment and ceased further work.

The next day, Brown returned to the residence and conducted a "walk through" with his foreman, Mitchell Zagal, to assess and document his incomplete tasks, as well as those he completed but had not yet submitted an invoice to Lott. Thereafter, Brown delivered to Lott a list of eight tasks that assigned a monetary value for the amount Brown sought for each task. For an uncompleted task on the list, Brown identified its percentage of completion. The list totaled $27,160. Lott ultimately hired Zagal to complete Brown's remaining tasks, with the notable exception of a special mural of Stevie Nicks[1] that Brown was in the process of painting at the time he ceased work.

After Lott refused to pay the amount demanded, Brown filed suit alleging that Lott breached their contract by failing to pay for the work performed and seeking damages. Brown alternatively alleged that he should be compensated for the value of the work performed under a quantum meruit theory. Lott filed a counterclaim alleging that Brown breached their agreement by ceasing work without cause, forcing Lott to incur additional costs to finish the tasks Brown left uncompleted by hiring Zagal.

The matter proceeded to a jury trial. The jury found that an agreement existed between the parties for the work Brown provided, that both Lott and Brown breached the agreement, and that Lott breached the agreement first. The jury awarded Brown the sum of $28,560 in damages under both the breach of contract and quantum meruit damage theories. In addition, the jury awarded

---

[1] Stevie Nicks is a well-known singer who has had a long and distinguished career as both a solo artist and member of the Fleetwood Mac musical group.

Brown attorney's fees in the amount of $17,309. The jury did not award Lott any damages for Brown's breach of the agreement. The trial court entered judgment in favor of Brown for $28,560 in actual damages and $17,309 in attorney's fees plus costs. Lott filed a motion for new trial, which the trial court overruled. This appeal followed.

## PRESERVATION OF ERROR

Lott complains on appeal that the evidence is both legally and factually insufficient to support the jury's damages award. Brown initially responds that Lott failed to properly preserve his sufficiency challenges. Because preservation of error is a prerequisite to challenging both the legal and factual sufficiency of the evidence, we first address whether Lott preserved these issues for appellate review.

To make a proper objection that preserves error for review, a party must raise a valid, specific, and timely objection or motion during the trial court proceedings that apprises the trial court of the argument in a way that calls for the trial court to decide that issue. *See* TEX. R. APP. P. 33.1(a)(1); *Redwine v. Peckinpaugh*, 535 S.W.3d 44, 51 (Tex. App.—Tyler 2017, no pet.). The only way to preserve factual sufficiency challenges after a jury trial is in a motion for new trial. TEX. R. CIV. P. 324(b)(2); *Cecil v. Smith*, 804 S.W.2d 509, 510 (Tex. 1991). A motion for new trial is one of four ways a legal sufficiency challenge can be preserved. *Cecil*, 804 S.W.2d at 510-11.

Lott sought to preserve his legal and factual sufficiency challenges through a motion for new trial. In that motion, Lott claimed the jury's answers to the questions awarding Brown contractual and quantum meruit damages (Questions five and seven of the charge) are against the great weight and preponderance of the evidence and that the evidence at trial established as a matter of law that Brown was not entitled to recover damages related to the Stevie Nicks mural included on Brown's list of unfinished work. As relief, Lott sought a new trial or alternatively, a remittitur.[2]

Brown disputes that Lott's motion for new trial properly preserved error as to factual sufficiency because the motion asserted only that the jury's responses to the damages questions

_____

[2] Because Lott made a legal sufficiency challenge for the first and only time in a motion for new trial, he is at most entitled to remand to the district court rather than rendition on appeal. *See Horrocks v. Tex. Dep't of Transp.*, 852 S.W.2d 498, 498-99 (Tex. 1993).

were against the great weight of the evidence. In his brief, Lott acknowledges using incorrect terminology in the motion but urges that a liberal reading of the motion reflects an argument challenging the sufficiency of the evidence to support the jury's damages award and therefore, preserved factual sufficiency error.[3] We interpret Brown's position as being that Lott failed to preserve error because his assertion that the jury's answers to the damages questions were against the great weight and preponderance of the evidence was too broad or general to merit consideration.

Judicial economy requires that the trial court have the opportunity to correct an error before an appeal proceeds. *In re C.O.S.*, 988 S.W.2d 760, 765 (Tex. 1999). The purpose of a motion for new trial is to provide the trial court with such an opportunity. *Gerdes v. Kennamer*, 155 S.W.3d 523, 532 (Tex. App.—Corpus Christi 2004, pet. denied). Each ground relied upon in a motion for new trial "shall briefly refer to that part of the ruling of the court . . . in such a way that the objection can be clearly identified and understood by the court." TEX. R. CIV. P. 321. Further, "[g]rounds of objections couched in general terms—as that the court erred in its charge, in sustaining and overruling exceptions to the pleadings, and in excluding or admitting evidence, the verdict is contrary to law, and the like—shall not be considered by the court." TEX. R. CIV. P. 322. On the other hand, the Texas Supreme Court has explained, a general "no evidence" complaint directed to a specific jury issue is usually sufficient to preserve error without further detail as to why the evidence is insufficient. *Arkoma Basin Exploration Co. v. FMF Assocs. 1990–A, Ltd.*, 249 S.W.3d 380, 387 (Tex. 2008). Similarly, while a single no evidence objection to "all 79 jury answers [would be] too general, the same objection addressed to each individual issue is adequate." *Id.* (citing *Biggers v. Cont'l Bus. Sys., Inc.*, 157 Tex. 351, 303 S.W.2d 359, 368 (Tex. 1957)). And, while acknowledging that "[i]f a single jury question involves many issues, it is possible that a general objection may not tell the trial court where to start," the supreme court has emphasized that such a post-trial objection is not necessarily insufficiently specific considering the context in which it is made, as "post-trial objections will rarely be as detailed as an appellate

---

[3] When the vital fact challenged is one on which the complaining party's opponent had the burden of proof, the factual insufficiency challenge is properly labeled an "insufficient evidence" challenge. However, when the challenged fact was one on which the complaining party had the burden of proof, the proper issue is that the adverse finding was "against the great weight and preponderance of the evidence." 6 Roy W. McDonald & Elaine A. Grafton Carlson, *Texas Civil Practice* 2d § 44.21. Since Brown had the burden of proof on the damages issue, the factual sufficiency challenge should have been labeled as "insufficient evidence" rather than "against the great weight and preponderance of the evidence."

brief because time is short, the record may not be ready, and the trial court is already familiar with the case." *Id.* at 388. Further, the court has stressed, "[l]ike all other procedural rules, those regarding the specificity of post-trial objections should be construed liberally so that the right to appeal is not lost unnecessarily." *Id.* The "cardinal rule" for error preservation, after all, is simply that "an objection must be clear enough to give the trial court an opportunity to correct it." *Id.* at 387.

Though Lott's motion for new trial mischaracterized the basis for his attack on the damages questions, assertions that the evidence was "insufficient" or "against the great weight and preponderance of the evidence" are both generally classified as issues challenging the factual sufficiency of the evidence. *See* W. Wendell Hall, *Standards of Review in Texas*, 38 St. Mary's L.J. 47, 261 (2006). Lott specifically identified the jury questions he contended were not supported by the evidence and asserted the evidence presented at trial did not support the damages award. Though the motion could have been more specific, we hold it was sufficient to preserve error on his factual sufficiency issues. *See Superior Trucks, Inc. v. Allen*, 664 S.W.2d 136, 145 (Tex. App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.).

Likewise, we conclude Lott preserved his legal sufficiency issue. In his motion for new trial, Lott asserted the evidence conclusively proves, as a matter of law, that Brown was not entitled to recover damages related to the painting because Brown did not complete it and Lott did not accept the painting such as to obligate Lott to pay Brown under either a contractual or quantum meruit theory.[4] Brown had the burden of proving the damages he sustained in Questions five and seven of the charge. Though Lott's motion incorrectly labeled his attack "as a matter of law" rather than as a "no evidence" challenge, he identified the basis under which he contended the evidence did not legally support the jury's award. As such, we conclude that Lott's motion for new trial preserved error on his legal sufficiency point as to the damages questions. *See Graham Cent. Station, Inc. v. Pena*, 442 S.W.3d 261, 263 (Tex. 2014).

---

[4] Whether the error is accurately characterized as a "no evidence" point or "as a matter of law" point depends on who had the burden of proof on the question being challenged. The "no evidence" standard is used to evaluate evidence supporting the factfinder's determination on an issue on which the appellant did not have the burden of proof at trial. *See Graham Cent. Station, Inc. v. Pena*, 442 S.W.3d 261, 263 (Tex. 2014). The "as a matter of law" standard is used to evaluate whether the evidence establishes an issue on which the appellant had the burden of proof at trial and whether the factfinder erred in not finding in the appellant's favor. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989). Both assert a complete lack of evidence on an issue. *See* W. Wendell Hall, *Standards of Review in Texas*, 38 St. Mary's L.J. 47, 234 (2006).

Having found Lott preserved his legal and factual sufficiency challenges, we now address whether the evidence supports the damages awarded to Brown. As to the breach of contract theory of recovery, Lott first argues there is no evidence supporting the causal connection between Lott's breach of any contract and the damages awarded. Lott's argument continues that Brown was paid for his completed work and by choosing to quit the project, he breached his own contractual commitments and therefore, there is no evidence that Lott's actions were a legal cause of any contractual damages.

As to contractual damages, Lott notes that the charge limited Brown's recovery to (1) loss of contractual profits plus expenses before the breach, and (2) what Lott agreed to pay Brown, less expenses, that Brown saved by not completing the unfinished items. By failing to produce probative evidence to quantify any expected profit or the amount of unreimbursed expenses that may have been saved, Lott argues there is no evidence to support the jury's verdict.

Under the quantum meruit theory of recovery, Lott challenges only the legal and factual sufficiency of the damages award. In support, he argues because the jury charge limited Brown's quantum meruit damages to the reasonable value of compensable work performed, and because Brown failed to provide any specific evidence as to his time, effort, and expenses incurred on each unfinished task, there is no evidence to establish the reasonable value of Brown's compensable work on each unfinished project.

The jury awarded Brown identical damages of $28,560 for both breach of contract and quantum meruit. The trial court signed a judgment for this amount plus attorney's fees and costs without specifying the legal theory on which the judgment was rendered. When a jury returns favorable findings on two or more alternative theories, the prevailing party need not formally waive the alternative finding and may seek recovery on the alternate theory if the judgment is reversed on appeal. *Boyce Iron Works, Inc. v. Sw. Bell Tel. Co.*, 747 S.W.2d 785, 787 (Tex. 1988). Accordingly, we must consider the sufficiency of the evidence to support the jury's verdict in Brown's favor on the breach of contract and quantum meruit theories of recovery.

## Standard of Review

Evidence is legally sufficient to support a factfinder's verdict if the evidence admitted in the trial "would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). To determine whether legally sufficient

evidence supports a challenged jury finding, we must consider evidence that favors the finding if a reasonable factfinder could consider it, and we must disregard evidence contrary to the challenged finding unless a reasonable factfinder could not disregard it. *Id.* We may not sustain a legal insufficiency, or "no evidence," point unless the record demonstrates (1) a complete absence of evidence of a vital fact; (2) that the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) that the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) that the evidence conclusively establishes the opposite of the vital fact. *Id.* at 810. More than a scintilla of evidence exists when the evidence supporting the finding, as a whole, rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Redwine*, 535 S.W.3d at 50. Less than a scintilla of evidence exists when the evidence is so weak as to do no more than create a mere surmise or suspicion of a fact. *Id.*

Depending on which party had the burden of proof at trial, a factual sufficiency review is based on either (1) insufficient evidence or (2) a great weight and preponderance of the evidence point. *Raw Hide Oil & Gas, Inc. v. Maxus Expl. Co.*, 766 S.W.2d 264, 275–76 (Tex. App.—Amarillo 1988, writ denied). When an appellant challenges the factual sufficiency of the evidence to support an adverse finding on which he did not have the burden of proof, the appellant must demonstrate there is "insufficient evidence" to support the adverse finding. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983). In reviewing a finding for factual sufficiency under this standard, we consider and weigh all the evidence in support of and contrary to the jury's finding and will set aside the finding only if it is so against the overwhelming weight of the evidence that the finding is clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). We note that, in making this review, we are not a fact finder. *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998). Accordingly, we will not pass upon the witnesses' credibility or substitute our judgment for that of the jury, even if the evidence would clearly support a different result. *Id.*

We review the sufficiency of the evidence in light of the jury charge as given unless charge error was preserved in the trial court. *Wal–Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 715 (Tex. 2001); *Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000) ("it is the court's charge, not some other unidentified law, that measures the sufficiency of the evidence when the opposing party fails to object to the charge"). When an element of a claim is omitted from the jury charge

7

without objection and no written findings are made by the trial court on that element, then the omitted element is deemed to have been found by the court in such manner as to support the judgment if it is reasonable to do so in light of the evidence in the record. TEX. R. CIV. P. 279; *Serv. Corp. Intern. v. Guerra*, 348 S.W.3d 221, 228–29 (Tex. 2011).

**Applicable Law - Breach of Contract**

To prevail on a claim for breach of contract, a party must establish the following elements: (1) a valid contract existed between the plaintiff and defendant, (2) the plaintiff tendered performance or was excused from doing so, (3) the defendant breached the terms of the contract, and (4) the plaintiff sustained damages as a result of the defendant's breach. *Petroleum Workers Union of the Republic of Mex. v. Gomez*, 503 S.W.3d 9, 39 (Tex. App.—Houston [14th Dist.] 2016, no pet.). A breach occurs when a party to the contract fails or refuses to do something that it promised to do. *B & W Supply, Inc. v. Beckman*, 305 S.W.3d 10, 16 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). A loss results from a breach of contract if the loss is the natural, probable, and foreseeable consequence of the breach. *Mead v. Johnson Grp., Inc.*, 615 S.W.2d 685, 687 (Tex. 1981).

It is a fundamental principle of contract law that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance. *Mustang Pipeline Co., v. Driver Pipeline Co.*, 134 S.W.3d 195, 196 (Tex. 2004) (per curiam). By contrast, when a party commits a nonmaterial breach, the other party is not excused from future performance but may sue for the damages caused by the breach. *Levine v. Steve Scharn Custom Homes, Inc.*, 448 S.W.3d 637, 654 (Tex. App.—Houston [1st Dist.] 2014, pet denied). In the context of construction contracts, when a contractor sues for the balance due on the contract and the property owner counterclaims for damages because of incomplete work or defective performance, if the contractor has substantially completed performance, i.e., the contractor's breach is not material, then the contractor has a claim for the unpaid balance and the owner has a claim for damages. *See Bartush-Schnitzius Foods Co. v. Cimco Refrigeration, Inc.*, 518 S.W.3d 432, 437 n.5 (Tex. 2017)*.*

While a party's nonmaterial breach does not excuse further performance by the other party, neither does the second breach excuse the first. *Id*. at 437. A material breach excuses future performance, not past performance. *Id.* Generally, materiality is an issue to be determined by the

8

trier of fact.  *Id*. at 436.  However, materiality may be decided as a matter of law if reasonable jurors could reach only one verdict.  *Id*. (citing *City of Keller*, 168 S.W.3d at 822).

The most common interest protected in breach of contract cases is the expectation interest, which seeks to restore the non-breaching party to the same economic position in which it would have been had the contract not been breached.  *Qaddura v. Indo–European Foods, Inc.*, 141 S.W.3d 882, 888–89 (Tex. App.—Dallas 2004, pet. denied).  This expectation interest, also known as the benefit of the bargain measure of damages, is measured by the claimant's expected receipts under the contract plus consequential losses caused by the breach, less any cost or other loss that the claimant avoided by not having to perform.  *See* RESTATEMENT (SECOND) OF CONTRACTS § 347 (1981); *Qaddura*, 141 S.W.3d at 889; *Abraxas Petroleum Corp. v. Hornburg*, 20 S.W.3d 741, 760 (Tex. App.—El Paso 2000, no pet.).

## Applicable Law - Quantum Meruit

Quantum meruit is an equitable remedy that is based upon the promise implied by law to pay for beneficial services rendered and knowingly accepted.  *Hill v. Shamoun & Norman, LLP*, 544 S.W.3d 724, 732 (Tex. 2018).  The purpose of this common law doctrine is to prevent a party from being unjustly enriched by retaining the benefits of the performance without paying anything in return.  *Id*.  To recover under quantum meruit, a claimant must prove (1) valuable services were rendered or materials furnished; (2) for the person sought to be charged; (3) those services and materials were accepted by the person sought to be charged, and were used and enjoyed by him; and (4) the person sought to be charged was reasonably notified that the plaintiff performing such services or furnishing such materials was expecting to be paid by the person sought to be charged.  *Id*. at 732–33.

Generally, a party cannot recover under a quantum meruit theory when there is a valid contract covering the services or materials furnished.  *In re Kellogg Brown & Root*, 166 S.W.3d 732, 740 (Tex. 2005).  However, the existence of an express contract does not preclude recovery in quantum meruit for the reasonable value of work performed and accepted which is not covered by an express contract.  *Hill*, 544 S.W.3d at 737.  The question of whether an express contract covers the services at issue is a legal question reviewed de novo.  *Id*.  Moreover, in the context of construction contracts, a contractor may recover the reasonable value of services rendered and accepted under the theory of quantum meruit if:

> (1) The services rendered and accepted are not covered by the contract; (2) the contractor partially performed under the terms of an express contract, but was prohibited from completing the contract because of the owner's breach; or (3) the contractor breached but the owner accepted and retained the benefits of the contractor's partial performance.

*Gentry v. Squires Constr., Inc.*, 188 S.W.3d 396, 402–03 (Tex. App.—Dallas 2006, no pet.); *see also Murray v. Crest Constr., Inc.*, 900 S.W.2d 342, 345 (Tex. 1995) (per curiam). The plaintiff is required to produce evidence of the correct measure of damages in order to recover on a quantum meruit claim. *LTS Grp., Inc. v. Woodcrest Capital, L.L.C.*, 222 S.W.3d 918, 920–21 (Tex. App.—Dallas 2007, no pet.). The measure of damages for recovery on a quantum meruit claim is the reasonable value of the work performed and the materials furnished. *Hill*, 544 S.W.3d at 733.

**Sufficiency of Evidence Supporting Quantum Meruit Award**

To determine whether the jury's award of quantum meruit damages is supported by legally sufficient evidence, we first must determine whether the work for which Brown sought recovery fell outside the scope of work contemplated within the parties' agreement. The jury found in response to the first question presented that Lott and Brown entered an agreement for Brown to perform work on the project in question. In response to Questions two and three, the jury found that both parties failed to comply with the agreement. In response to Question four, the jury found that Lott failed to comply with the agreement first. In response to Question six, pertaining to quantum meruit liability, the jury found that Brown performed compensable work on Lott's behalf for which he was not compensated. The instructions for Question six set forth the elements for quantum meruit but did not condition or limit the jury's consideration to work performed by Brown that was not covered by the parties' agreement. Likewise, Question seven, pertaining to quantum meruit damages, did not limit the jury's consideration to work Brown performed outside the scope of the parties' agreement. After making a de novo review of the entire record before us, we hold that Brown is not legally entitled to quantum meruit damages because all the work for which he sought recovery was covered under the parties' agreement.

The parties agree, and the record supports, that there was an agreement for Brown to perform work on the project. The agreement began as an accepted written proposal for Brown to perform specific work for an agreed upon price. The parties further agreed that the scope of the work changed considerably over the course of the following eighteen months as the client requested more work to be done. Both agreed that the work Brown ultimately performed and for which he received payment was substantially more than the scope of work contained within his

initial proposal.  Lott does not challenge the legal and factual sufficiency of the evidence to support the jury's finding that an agreement existed under which Brown provided services and materials on the project.  The existence of a valid contract between the parties is undisputed.

Brown sought recovery for eight unfinished or unbilled items, and a list of those items was admitted into evidence as Plaintiff's Exhibit Nine without objection.  The list identified each task Brown claimed was either unfinished or complete but not yet invoiced, the percentage of completion if unfinished, and the amount he claimed for each item.  Brown testified that each item was either on the original proposal or an item added during the eighteen months he worked on the project.  Lott vigorously contested his obligation to pay for unfinished work when Brown ceased work, and he presented conflicting evidence contesting the percentage of completion on some of the items.  However, no evidence was presented that any item on Brown's list was unauthorized work under the parties' express agreement.  Because the evidence was uncontroverted that the tasks identified on Brown's list were covered by the parties' agreement, we hold as a matter of law that Brown's recovery was limited to breach of contract and he is precluded from recovering under quantum meruit.  As such, we sustain Lott's complaint that the evidence was legally insufficient to support the quantum meruit damages award.  *See Hill*, 544 S.W.3d at 737.  Because we so hold, we need not address Lott's factual sufficiency complaint.  *See* TEX. R. APP. P. 47.1.

**Legal and Factual Sufficiency of the Evidence Supporting Breach of Contract**

Lott initially argues the evidence is legally insufficient because there is no causal connection between Lott's failure to comply with the parties' agreement and Brown's damages.  He notes that the parties agreed that Brown would send Lott an invoice upon completion of a specific task at which time Lott would pay Brown for the completed invoiced work.  The argument continues that since there were no outstanding invoices owed to Brown when he ceased work, Lott had no existing duty to pay Brown any money and therefore, he could not be in breach of the parties' agreement as a matter of law.

At the outset, we note that the jury was not asked whether Brown substantially performed under the parties' agreement, whether the breaches were "material," or whether Brown's failure to complete the work under the parties' agreement was excused.  Lott did not object to the court's charge or otherwise preserve any charge error in the trial court.  Under such circumstances, we evaluate the evidence based on the charge as submitted to the jury.  *See Sturges*, 52 S.W.3d at 715.

11

Furthermore, we may deem findings on missing elements in favor of the judgment if it would be reasonable to do so in light of the evidence in the record. *See Guerra*, 348 S.W.3d at 228–29.

While it is true that there were no outstanding invoices that Lott owed Brown when he ceased work, Lott fails to consider evidence of the reductions he made to Brown's invoices over the course of the project which exceeded $50,000. Though Brown testified that he was not seeking recovery for the amount by which Lott reduced his invoices, he testified the reductions were unjustified and served as the basis of his decision to quit the project before completing all the work. In Question two, the jury was asked only whether Lott failed to comply with the agreement by failing to pay Brown for work performed. The jury was not instructed to limit its consideration of the evidence in answering this question to any particular time frame during the project. Accordingly, the jury was entitled to consider whether the invoice reductions constituted a breach of the parties' agreement.

Brown testified he fully performed the work contained within his invoices totaling $399,000. While Lott contended the reductions were justified due to reasons such as duplicate billing and uncompleted work, it was within the jury's province to disbelieve Lott's explanations for the reductions and find that Lott breached the parties' agreement by failing to pay Brown for the full amount he invoiced to Lott. Jurors are the sole judges of the credibility of the witnesses and the weight to give their testimony. *See City of Keller*, 168 S.W.3d at 819. Reviewing courts cannot impose their own opinions to the contrary. *Id.* As such, we hold the evidence is legally sufficient to support the jury's finding that Lott breached the parties' agreement, and that Brown suffered damages as a result when Lott's breach caused him to cease work.

We make the same conclusion as to Lott's factual insufficiency argument. The evidence clearly shows that Lott reduced Brown's invoices. Though there was conflicting evidence as to whether the reductions were justified, it is uncontroverted that Lott reduced Brown's invoices. It was natural, probable, and foreseeable that damages would result from the breach, namely that Brown would not be fully compensated for the work he completed at the time he ceased work. *See Mead*, 615 S.W.2d at 687.

After considering the entire record, we hold that the evidence supporting the jury's finding that Lott failed to comply with the parties' agreement was not so against the overwhelming weight of the evidence that the finding is clearly wrong and unjust. *Cain*, 709 S.W.2d at 176. Accordingly, we reject Lott's complaint that evidence of causation was legally and factually

12

insufficient to support the finding that Lott breached the parties' agreement, and that Brown suffered damages as a result.

**Legal and Factual Sufficiency of the Evidence Supporting Damages Award**

We now address Lott's argument that the evidence is legally and factually insufficient to support the amount of the jury's award for breach of contract damages found in Question five. As we noted above, Brown identified eight items of either unbilled or unfinished work for which he sought recovery. The amount he claimed for these eight items was $27,160. One of the items was a black screen painting of Stevie Nicks which we will address below. Another was for painting a bed frame in the amount of $600 which Brown's attorney conceded at trial should not be awarded. Of the remaining six tasks for which Brown sought damages, the evidence reflects work was unfinished as to four of the items, although Brown specified a percentage of completion for each task. The remaining two tasks were represented to be finished but not yet invoiced when Brown ceased working on the project. Brown specified an amount of money he sought for each item, which was listed on Plaintiff's Exhibit nine and admitted into evidence without objection.

Lott argues that Brown's evidence was conclusory and therefore, represents no evidence to support the jury's damages award. He points out that the jury was instructed to limit Brown's damages to "loss of contractual profits plus expenses before the breach," or the amount Lott agreed to pay Brown less expenses that Brown saved by not completing certain tasks. By offering no specifics as to the amount or value of labor incurred or cost of materials expended on any item, Lott argues Brown neither quantified any expected profit nor specified any unreimbursed expenses or amounts saved by not completing the work.

We agree that Brown's testimony was general and did not quantify the time and labor he incurred or expended on the itemized tasks, the value of that labor, or the amount of any expenses incurred. If Brown's evidence would have been limited to his testimony and the exhibit itemizing the tasks and money he sought, Lott's argument would have merit. However, Brown's exhibit and testimony is not the only evidence within the record. Numerous documents created by Brown were admitted into evidence, without objection, that described the work Brown performed on the project. Those documents described both the work to be performed and the charges for that work. Some of the documents were bids while others were invoices for payment.

In addition, there is testimony from Zagal, who worked with Brown during the eighteen months he performed work on the project and finished Brown's uncompleted tasks. With the

exception of painting the bed frame, Zagal corroborated Brown's testimony as to items on Browns' list. Zagal's bids and invoices reflect the work he performed and the amount he charged Lott, and they were admitted into evidence without objection. Numerous documents within Lott's project file, which were also admitted into evidence without objection, included duplications of documents Brown offered and documentation of monies Lott paid Brown on the project. While he contested his obligation to pay Brown for the unfinished work, Lott did not contest values Brown associated with the items on Browns' list.

Given the testimony presented and documents introduced, we disagree Brown's evidence as to contractual damages is conclusory and the jury's award unsupported by the record. Accordingly, we overrule Lott's challenge to the sufficiency of the evidence supporting the award for six items on Brown's list of unfinished or unbilled tasks.[5]

**Legal Sufficiency of the Evidence Supporting Damages for Stevie Nicks Mural**

Our assessment of damages awarded as to the Stevie Nicks painting yields a different result. This was a unique specialty art item which was described as a 6' x 12' black screen mural to be hung in the home's media room, which would be extended to block sunlight when the room was in use. The central part of the mural was a depiction of Stevie Nicks painted by Brown.

The evidence is undisputed Brown had not completed the mural when he ceased work, it remains incomplete, and remains in Brown's possession. Brown's evidence is that the mural was seventy-five percent complete when he stopped working, but there is no testimony concerning the tasks required to complete the mural. Unlike the other items on Brown's list that were ultimately completed by Zagal, this specialty item could be completed only by Brown and presumably, the customer pursued a different option and no longer desired Brown's work.

Based on Brown's subjective opinion that the mural was seventy-five percent complete at an agreed upon price of $18,000, Brown sought $13,500 for the value of the work he performed for this mural project.[6] However, he did not quantify the number of hours of labor he devoted to

---

[5] Lott also attacked the award of attorney's fees to Brown based on the evidence being legally and factually insufficient to support the damages award. Because an award of attorney's fees must be based on an award of actual damages, Lott contends the legal and factual insufficiency of the evidence supporting the damages award also negates the attorney's fees award. Having found the evidence is legally and factually sufficient to support some of Brown's damages, there is an actual damages award supporting the attorney's fees award in the judgment. This being the sole basis of contesting attorney's fees, we need not further address Lott's complaint as to the attorney's fees award. *See* TEX. R. APP. P. 47.1.

[6] There is conflicting evidence as to Brown's bid for creating the mural but it was either $16,000 or $18,000. Brown admitted that he received at least $6,000 for work on the mural before he ceased working on the project.

14

creating the mural, provide any detail concerning his out-of-pocket expenses he incurred on the mural before ceasing work, or explain what he would reasonably expect to expend to complete the mural. Given the uniqueness of this item and its anticipated use, Brown testified that he would be unable to sell the mural to any third party.

It is undisputed that the mural was a unique item of art created for Lott's client with limited outside marketability. That does not mean the mural, completed or not, has no value. But simply specifying its percentage of completion and the proposed bid price does not provide the necessary evidence to ascertain any contractual profit Brown would realize or the expenses he saved by not completing the project. *See Data Foundry, Inc. v. Silicon Integration Initiative, Inc.*, No. 03-09-00063-CV, 2010 WL 2336464, at *3 (Tex. App.—Austin June 11, 2010, no pet.) (mem. op.) (holding that company did not prove contract damages because it did not offer any evidence of the costs or losses it avoided by not having to fully perform). Unlike the other items on Brown's list, the numerous documents admitted into evidence provide no guidance to the jury to determine his contractual profit, the expenses he incurred to complete the project, or the losses he avoided by not completing the mural. *See Kormanik v. Seghers*, 362 S.W.3d 679, 690 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (holding art marketer failed to prove damages in breach of contract case against art collector because marketer failed to prove costs he would have incurred had he fully performed as part of losses avoided component of damages equation).

Finally, we have held above that the services for which Brown seeks damages are covered under an express contract, thereby foreclosing any recovery under quantum meruit. *See Hill*, 544 S.W.3d at 733. But even if Brown could show that the exception pertaining to partially performed construction contracts applies here, he failed to provide legally sufficient evidence of quantum meruit damages pertaining to the mural. *See, e.g., Gentry*, 188 S.W.3d at 402–03. A party must introduce evidence under the correct measure of damages to recover on a quantum meruit claim, meaning that the party must establish the reasonable value of work performed or materials furnished. *Hill*, 544 S.W.3d at 736.

The unfinished mural remains in Brown's possession. Neither Lott nor the client have or will realize any benefit from this piece of art. Simply testifying he spent "hours and hours" creating the mural and incurred expenses, without further detail, does not establish the reasonable value of the work performed or materials furnished, and is legally insufficient to substantiate the damages awarded by the jury for this item. *See Brandt Cos., LLC v. Beard Process Sols., Inc.*, No. 05-17-

15

00780-CV, 2018 WL 4103210, at *13-14 (Tex. App.—Dallas Aug. 29, 2018, no pet. h.) (mem. op.) (holding contractor in construction contract case who testified as to amount of hours spent on contract plus costs and markup failed to provide legally sufficient evidence of reasonable value of services performed to support quantum meruit claim with even more detailed proof than present case).

Even had Brown provided more detail, such a measure of damages (percentage of completion of the full contract price) is derived from the agreement and would be based on breach of contract damages, which is not the appropriate measure of damages for quantum meruit. *See San Antonio Aerospace, L.P. v. Gore Design Completions, Ltd.*, No. 07-06-0309-CV, 2008 WL 2200035, at *2 (Tex. App.—Amarillo May 28, 2008, pet. denied) (mem. op.) (concluding evidence was legally insufficient to support quantum meruit award because evidence showed award was based on total value of contract); *M.J. Sheridan & Son Co., Inc. v. Seminole Pipeline Co.*, 731 S.W.2d 620, 625 (Tex. App.—Houston [1st Dist.] 1987, no writ) (concluding evidence of actual costs incurred on job represented damages for breach of contract, not quantum meruit).

Accordingly, we sustain the portion of Lott's issue contesting the legal sufficiency of the evidence supporting the jury's award for breach of contract concerning the Stevie Nicks mural.

## DISPOSITION

Having partially sustained Lott's legal sufficiency issue as to contractual damages, we address the proper disposition. Lott seeks remand to the trial court for a new trial on both liability and damages. *See* TEX. R. APP. P. 44.1. However, if part of a damages verdict lacks sufficient evidentiary support, the proper disposition is to suggest a remittitur of that part of the verdict, giving the party prevailing in the trial court the option of accepting the remittitur or having the case remanded for a new trial. *See Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 124 (Tex. 2009) ("[W]hen there is some evidence of damages, but not enough to support the full amount, it is inappropriate to render judgment"); *Samuels v. Nasir*, 445 S.W.3d 886, 894 (Tex. App.—El Paso 2014, no pet.) (Texas Rule of Appellate Procedure 46.3 permits court to suggest remittitur when "appellant complains there is insufficient evidence to support an award and the court of appeals agrees, but concludes there is sufficient evidence to support a lesser award").

16

As set out above, the record contains some evidence supporting the jury's award of breach of contract damages as to six of the eight items on Brown's list, but does not support the full award. *See ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 877–78, 880 (Tex. 2010) (holding that evidence was legally insufficient to support amount of lost profit damages awarded by trial court, but there was "legally sufficient evidence to prove a lesser, ascertainable amount of lost profits with reasonable certainty," and remanding case to court of appeals to consider suggestion of remittitur); *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 777 (Tex. 2009) (holding that some evidence supported award of damages, but not at level awarded by trial court, and remanding to court of appeals to determine whether to remand for new trial or suggest remittitur). The total amount Brown testified he sought was $27,160. Brown's attorney conceded and directed the jury in both opening and closing arguments to not award Brown $600 for the unfinished bed frame item. This would reduce the amount Brown sought to $26,560.[7] Brown sought damages in the amount of $13,500 for the Stevie Nicks mural which we have found the evidence is legally insufficient to support.

Because the evidence is sufficient to support some, but not all of the damages awarded by the jury, we *suggest a remittitur* of actual damages in Brown's contract claim in the amount of $15,500 ($13,500 for the Stevie Nicks mural, $600 for the bed frame, and $1,400 in attorney's fees set forth in the pre-suit demand letter), thereby reducing actual damages awarded from $28,560 to $13,060. If Brown timely files the remittitur, we will *reform* and *affirm* that portion of the judgment along with the award of attorney's fees. *See* TEX. R. APP. P. 46.3; *Akin, Gump, Strauss, Hauer & Feld, L.L.P.*, 299 S.W.3d at 124. However, if Brown does not timely file the remittitur, we will *reverse* the trial court's judgment and *remand* for a new trial on both liability and damages as to Brown's breach of contract claim. *See id.*; *see also Rancho La Valencia, Inc. v. Aquaplex, Inc.*, 383 S.W.3d 150, 152 (Tex. 2012) (per curiam) (holding in similar circumstances that if party fails to accept remittitur, court of appeals must reverse trial court's judgment and remand for new trial on both liability and damages); TEX. R. APP. P. 44.1(b) ("The court may not order a separate trial solely on unliquidated damages if liability is contested.").

---

[7] The jury awarded $28,560 in contractual damages which was the amount Brown's attorney argued should be awarded. A review of the record indicates $28,560 was the amount demanded in Brown's pre-suit demand letter, which sought $27,160 for the items listed plus $1,400 in attorney's fees. It is clear to us that requesting that the jury award $28,560 was a miscalculation by Brown's attorney and that the actual amount sought was $26,560.

**GREG NEELEY**
Justice

Opinion delivered November 28, 2018.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

18



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# ORDER

**NOVEMBER 28, 2018**

**NO. 12-17-00093-CV**

**LARRY LOTT, D/B/A LARRY LOTT INTERIORS,**
Appellant
V.
**BOBBY BROWN,**
Appellee

Appeal from the 7th District Court

of Smith County, Texas (Tr.Ct.No. 15-0787-A)

THIS CAUSE came to be heard on the appellate record and the briefs filed herein, and the same being considered, it is the opinion of this court that there was error in the judgment of the court below insofar as the trial court's judgment awarded $28,560.00 in actual damages to Appellee, **BOBBY BROWN**.

It is therefore ORDERED, ADJUDGED and DECREED that the portion of the trial court's judgment awarding $28,560.00 in actual damages be **reversed** and suggest a *remittitur* in the amount of $15,500.00, thereby reducing total actual damages from $28,560.00 to $13,060.00  If Appellee timely files the remittitur in the trial court within *five (5) days* of the date of this opinion, that portion of the trial court's judgment will be **reformed** and **affirmed along with the award of attorney's fees**.  If Appellee does not timely file the remittitur, we will **reverse** the judgment and **remand** for a new trial on both liability and damages.

Greg Neeley, Justice
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*